IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**WAYNE AND MARY GRAVES, FOR AND ON
BEHALF OF W.A.G., A MINOR**             **PLAINTIFFS**

**VERSUS**             **CIVIL ACTION NO. 2:09cv169KS-MTP**

**TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, USA, INC.**             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Exclude Expert Testimony of Nathan Dorris **[#127]** filed on behalf of the plaintiffs, Wayne and Mary Graves, for and on Behalf of W.A.G., a minor ("Graves"). The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims. The accident occurred on December 31, 2008, at approximately 8:20 a.m. on U.S. Highway 84 in Jones County, Mississippi. This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4Runner traveling east. The posted speed limit was 65 miles per hour. As W.A.G. approached the intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness

testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began to yaw and then roll over multiple times. Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

There are three known eyewitnesses to the subject accident: Barbara Jenkins and Marva Armond, traveling in the same vehicle in the opposite direction from W.A.G. (westerly); and Jesse Gass, who was traveling in the same direction (easterly) as W.A.G., and was behind the vehicle operated by W.A.G. None of the three eyewitnesses observed W.A.G. leave the paved roadway. The deposition testimony of Marva Armond establishes that she observed W.A.G. on the roadway with both hands on the steering wheel prior to the sudden steering input to the left and the eventual rollover. Jesse Gass testified that he observed W.A.G. engage in a sudden steering input to the left and observed the W.A.G. vehicle in a rollover sequence. In response to questioning about the event, Gass testified that even though he was not paying close attention to W.A.G.'s vehicle prior to the wreck, he did not see W.A.G.'s vehicle leave the roadway because "in my mind, if he had swerved off the side of the road, there would have been a cloud of dirt without a doubt, because there's that gravel there."

On March 1, 2011, the defendants, Toyota Motor Corporation and Toyota Motor Sales, USA, Inc. ("Toyota") filed the required Designation of Experts pursuant to the Case Management Order and in accord with Fed. R. Civ. P. 26(a)(2). In the Designation, Toyota identified Nathan Dorris as a "may call" expert witness and pursuant thereto produced the report of Dorris, dated February 24, 2011. On April 29, 2011 Toyota produced certain summaries, annotations and articles/studies Dorris

purportedly relied upon in forming opinions articulated in his report. Dorris was deposed on May 6, 2011.

Dorris has been tendered as a Human Factors Engineer (HFE). Dorris obtained his MS and Ph.D. in industrial and systems engineering from Auburn University in 2004. Toyota has indicated that Dorris intends to offer expert testimony in the area of human factors analyses and the adequacy of certain warning and safety communications associated with the subject 1995 Toyota 4-Runner on handling, stability and rollover risks. With reference to the human factors analyses, Dorris has reached the following opinions:

> A. Based upon the Cellular South phone records, W.A.G. was text-messaging very close in time to the accident occurring. *See* Depo. Dorris at pp. 62-63.
>
> B. Based upon certain anticipated testimony as well as the available scientific literature described in his report, one can reasonably conclude that the accident sequence was initiated as a result of driver inattention.

Dorris contends that the alleged inattention was more likely than not a result of a possible interaction with (or attention focused on) his cell phone by W.A.G. Dorris concludes that immediately prior to the crash sequence, W.A.G. was inattentive to his vehicle's position on the roadway, resulting from several possible interactions, and that the subsequent reactions were influenced by the late recognition of his vehicle's position. *See* Depo. Dorris at p. 80.

Dorris reviewed the Jones County Sheriff's Department Incident Report, the State of Mississippi Uniform Crash Report and the cellular phone records from Cellular South for a period of time including the morning of December 31, 2008 in arriving at his conclusions. The parties obtained the deposition testimony of Lance Taylor, the officer

who prepared the State of Mississippi Uniform Crash Report, as well as the deposition of Officer David Smith. Taylor and Smith are patrol officers employed by the Mississippi Highway Patrol. Neither Taylor nor Smith are accident re-constructionists, yet they both testified that they concluded W.A.G ran off the roadway before the accident.

Taylor testified in his deposition that even though he believes W.A.G. left the roadway prior to the accident, he did not obtain photographs of the area he believed to be the point W.A.G. left the roadway because he did not witness the accident; he was not positive that the markings he observed were in fact from the W.A.G. vehicle; and because he was not comfortable with that assumption. Nevertheless, Dorris relies on Taylor's assumptions to reach his conclusions. Both Taylor's and Smith's opinions about W.A.G. running off the roadway are subject to a separate motion to exclude.

The Cellular South records, on the morning of December 31, 2008 prior to the accident, confirm that W.A.G. did not place nor receive a cellular telephone call prior to the subject accident but that he sent two text messages, one at 8:06.28 a.m. and the other at 08:14:35 a.m. There was no other cellular activity prior to the accident.

The Jones County Sheriff's Department Incident Report indicates that the 911 call was received at 8:20 a.m. Jesse Gass confirmed that he placed the 911 call from his moving vehicle immediately upon observing the W.A.G. vehicle in a rollover mode and continued on with the 911 call as he exited his vehicle and started his approach to the W.A.G. vehicle. A cell phone was found in the roadway in proximity to the accident which has been identified as belonging to W.A.G.

Based upon this evidence and certain studies/articles identified in his report, Dorris concludes that W.A.G. was text messaging "very close" in time to the accident

occurring and/or that W.A.G must have been focused on or interacting with his cell phone at or near 8:19 a.m. or the point W.A.G. allegedly traveled off the paved roadway. Dorris also has offered opinions related to warnings. The warnings issue is the subject of a separate Toyota motion for summary judgment. Graves does not object to the warnings opinions of Dorris here and has conceded the warnings issue raised by Toyota in its motion. Thus, the warnings opinions of Dorris are not relevant to the court's conclusions. Graves has moved to exclude only the opinions offered by Dorris relating to driver inattention asserting that they are unreliable and unhelpful to the trier of fact under Rule 702 of the Federal Rules of Evidence and controlling precedent.

## ADMISSIBILITY OF EXPERT TESTIMONY

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule was that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial court in determining whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

   We conclude that *Daubert's* general holding--setting forth the trial judge's

> general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171. Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Kumho*, 119 S. Ct. at 1176. In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." 119 S. Ct. at 1177.

This court has been instructed by *Kumho*, interpreting *Daubert,* that the opinions stated by Dr. Dorris are not the only objects of the relevancy and reliability determination. Indeed, the court is also required to determine the reliability of his basis for arriving at those conclusions. 119 S.Ct. at 1177. The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community. This court recognizes that several of the factors listed above may or may not be relevant to a determination of the issues before it. Therein lies the flexibility of the gatekeeper responsibility as mandated by the Supreme Court.

As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility. *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997). In this age of

"post-*Daubert*" sensibility, especially as enlightened by the United States Supreme Court's pronouncements in *Kumho*, the trial courts have been instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert*, and the many cases applying *Daubert* including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. See *Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. See *Guy v. Crown Equipment Corp*. 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th

Cir.1998) (en banc).  "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007) (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

Therefore, before Dorris may testify, this court must, at a minimum, determine that (1) he is qualified to offer opinion testimony; (2) he has employed sound methodology in forming his opinions; (3) the data he relied on in forming his opinions is reliable; and, most importantly, (4) his opinion testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.  Of course, the burden of establishing the admissibility of Dorris' testimony falls on Toyota as the proponent of that expert testimony.  *Moore v. Ashland Chem., Inc.*, 151 F.3d at 276; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *Daubert*, 509 U.S. at 592, n. 10.

Finally, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403.  *See Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996).  "[E]xpert evidence can be both powerful and quite misleading . . . [Rule] 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.  To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403."  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## **ANALYSIS**

As alluded to above, Graves does not directly attack the qualifications of Dorris, but instead attacks both the reliability of his conclusions and the helpfulness of those conclusions to the trier of fact. Graves also makes a passing argument that Dorris' conclusions are more prejudicial than probative under Rule 403.

Even though Graves has not attacked the qualifications of Dorris, the court deems them relevant to its ultimate conclusions of reliability and helpfulness. Indeed, Dr. Dorris is well qualified in his field. He has obtained both a Ph.D. and MS in Industrial and Systems Engineering from Auburn University, with specialization in Human Factors Engineering. He has extensive work experience in evaluating, designing and developing warnings and other safety communications for manufacturers and trade associations.

Since 2004, Dr. Dorris' primary responsibilities have included the design and implementation of product safety research, including evaluations of human-machine interfaces as well as the usability and effectiveness of precautionary information. He is board certified in Professional Ergonomics; he serves on the American National Standards Institute ("ANSI") Z535 Committee that promulgates voluntary, consensus warning standards and is chairman of the ANSI Z535.5 standard subcommittee. Dorris is an affiliate professor at Auburn University where he teaches a graduate course in Human Factors Engineering.

Dr. Dorris has published numerous peer reviewed articles and reports in the area of Human Factors Engineering. He has studied and researched the scientific literature,

studies and testing on the issue of driver inattention and has participated in studies on driver perception/reaction time issues.

Of critical importance to the argument of Toyota, is its assertion that Dorris did not rely only on the Mississippi Uniform Accident Report containing the opinion of Officer Taylor, the cell phone records of W.A.G. and a 1997 paper published in the New England Journal of Medicine to reach his conclusions that driver inattention resulted in the initiation of the accident sequence and that W.A.G.'s interaction with his cell phone was more likely than not the source of the inattention. Instead, Toyota insists that Dorris' approach and methodology is best reflected by his report which discusses the scientific literature on the issue of driver inattention in the context of the evidence in this case.

Graves argues that to comply with the mandate of Rule 702 that his opinions be helpful and reliable, Dorris merely falls back on studies that do nothing more than formalize what the ordinary juror would know - that an inattentive driver may be subject to an increased risk of impaired driving performance. Thus, Graves contends that Dorris becomes nothing more than an embouchure for statistical studies and reports on the association or relationship between driver inattention and affected driver performance. Graves is correct that expert testimony is subject to exclusion when the expert merely stacks inference upon inference in reaching his opinions when statistical reports supplant the total absence of proof with a study conducted under controlled and totally different circumstances.

While Dr. Dorris' report is indeed detailed and laced with scientific research and conclusions relative to driver inattention, at the end of the day, this court concludes that it

is too speculative to pass either the reliability threshold of Rule 702 or to be helpful to the trier of fact.  As Graves points out, there is nothing reliable about time extrapolated opinions [since W.A.G. sent a text message at 8:14:35 a.m. he must have been focused on or interacting with his cell phone 5 or 6 minutes later] and supported only by speculative theories that W.A.G was either (1) searching for his cell phone, (2) looking at his cell phone or (3) trying to verify that his cell phone was still in the same place he left it.  An expert's opinions are inadmissible when the expert piles speculation upon speculation.

Indeed, the entire foundation that driver inattention contributed to this accident is built on sand.  Dorris relies on the unsubstantiated and speculative conclusions of the investigating officers, Taylor and Smith that W.A.G. left the roadway prior to the accident, to start the engine of inattentiveness down the tracks from the station.  "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is unreliable."  *See Guillory v. Domtar Indus.*,95 F.3d 1320, 1331 (5th Cir. 1996) (court property excluded expert's opinion because it was based upon incorrect, altered facts and speculation designed to bolster the defendant's position); *Torch Energy Mktg.*, No. Civ.A. H-01-3402, 2003 U.S. Dist. LEXIS 20941, at *31 (S.D. Tex. Mar. 31, 2003); *In re Air Crash Disaster*, 795 F.2d 1230, 1235 (5th Cir. 1986).

Dorris continues to compound the problem by correlating cell phone usage several minutes before the accident with speculative inattention leading to the supposed exit from the roadway.  In fact, he seems to totally ignore the eye witnesses who saw no

sign that W.A.G. ever left the traveled portion of the roadway before the accident. Toyota merely suggests to the court that the witness testimony is inconclusive as to whether W.A.G. ever departed on the right gravel shoulder of the highway.

To be sure, W.A.G. made an unexplained hard veer to his left to set the accident in motion. During his deposition, Dorris was very careful to qualify his opinions stating, "I'm not saying he was physically talking on the cell phone or sending a text message. There could be physical interaction with the phone that occurred immediately prior to or at the time that the accident sequence is initiated." Speculation and conjecture built upon speculation and conjecture is neither helpful nor reliable under Rule 702. "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). Indeed, a core rule of evidence is that "speculation is unreliable ... and is inadmissible." *Dunn v. Sandoz Pharm. Corp.*, 275 F. Supp.2d 672, 684 (M.D.N.C. 2003). "The courtroom is not the place for scientific guesswork, even of the inspired sort." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996). "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). What caused W.A.G. to veer left is best left to the determination of the jury after all of the relevant facts are put before them. Dr. Dorris' opinions would not assist them in that effort. His opinions relative to driver inattention are thus excluded from the trial of this matter. Since Dr. Dorris's opinions relative to warnings were not challenged by Graves, the court makes no determination about them. However, such opinions are irrelevant in

light of Graves' concession of Toyota's motion on the issue and addressed by a separate order of the court.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Exclude the Expert Testimony of Nathan Dorris **[#127]** filed on behalf of the plaintiffs, Wayne and Mary Graves, for and on Behalf of W.A.G., a minor, is granted and the expert opinions offered by Dr. Nathan Dorris relative to driver inattention are excluded.

IT IS FURTHER ORDERED AND ADJUDGED that the expert opinions of Dr Nathan Dorris on the subject of warnings are not excluded by this order but a showing of relevance will be necessary before any such opinions are offered in light of the plaintiffs' concession of the warnings issue in response to Toyota's separate Motion for Summary Judgment.

SO ORDERED AND ADJUDGED this the 30th day of September, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE