IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

| | |
|---|---|
| **WAYNE AND MARY GRAVES, FOR AND ON BEHALF OF W.A.G., A MINOR** | **PLAINTIFFS** |
| **VERSUS** | **CIVIL ACTION NO. 2:09cv169KS-MTP** |
| **TOYOTA MOTOR CORPORATION AND TOYOTA MOTOR SALES, USA, INC.** | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Exclude Opinion Evidence to be Offered by Lance Taylor **[#135]** and on a Motion to Exclude Opinion Evidence to be Offered by David Smith **[#137]** filed on behalf of the plaintiffs, Wayne and Mary Graves, for and on Behalf of W.A.G., a minor ("Graves"). The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motions are well taken and should be granted. The court specifically finds as follows:

### BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims. The accident occurred on December 31, 2008, at approximately 8:20 a.m. on U.S. Highway 84 in Jones County, Mississippi. This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4-Runner traveling east. The posted speed limit was 65 miles per hour. As W.A.G. approached the

intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began to yaw and then roll over multiple times. Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

There are three known eyewitnesses to the subject accident: Barbara Jenkins and Marva Armond, traveling in the same vehicle in the opposite direction from W.A.G. (westerly); and Jesse Gass, who was traveling in the same direction (easterly) as W.A.G., and was behind the vehicle operated by W.A.G. None of the three eyewitnesses observed W.A.G. leave the paved roadway. The deposition testimony of Marva Armond establishes that she observed W.A.G. on the roadway with both hands on the steering wheel prior to the sudden steering input to the left and the eventual rollover. Jesse Gass testified that he observed W.A.G. engage in a sudden steering input to the left and observed the W.A.G. vehicle in a rollover sequence. In response to questioning about the event, Gass testified that even though he was not paying close attention to W.A.G.'s vehicle prior to the wreck, he did not see W.A.G.'s vehicle leave the roadway because "in my mind, if he had swerved off the side of the road, there would have been a cloud of dirt without a doubt, because there's that gravel there."

Officer Lance Taylor ("Taylor"), a Mississippi Highway Patrol Trooper First Class with four years experience at the time of the accident, was dispatched to the accident scene. He was the primary investigating officer and remained at the accident scene approximately forty minutes. Officer David Smith ("Smith"), also an officer with the MHP, was at his home in close proximity to the accident so he traveled to the scene to offer

assistance to Taylor in investigating and processing the accident. Later that day, Taylor completed the State of Mississippi Uniform Crash Report. In the Uniform Crash Report and in his deposition, Taylor offers an opinion that the 1995 4-Runner "ran off the roadway to the right and overcorrected." Taylor also opines in the Uniform Crash Report that a contributing circumstance of this accident was W.A.G.'s "failure to keep a proper lane/run off road." Even though Smith did not complete any portion of the Uniform Crash Report, he has testified that he agrees with Taylor's opinions and adopts them as his own. In fact, Smith's involvement and participation in the investigation of this accident was extremely limited as he did nothing more than mark certain areas of the accident scene with orange spray paint and direct traffic when necessary.

Taylor did not obtain written or recorded statements from any of the three eyewitnesses to the accident. He did speak briefly to Barbara Jenkins and Marva Armond, two of the three eyewitnesses to the accident. However the interview was "just long enough . . . to obtain a positive identification and a brief verbal statement." Taylor did not interview the third eyewitness, Jesse Gass.

Taylor has never received training in accident reconstruction, and honestly admits that he does not consider himself an accident reconstructionist. No measurements were taken at the accident scene by Taylor nor anyone else. Taylor testified that typically, an officer investigating an accident of this type will use spray paint to mark the location where the vehicle left the roadway and the location where the vehicle reentered the roadway, so as to enable the crash team investigators, if a fatality has occurred, to later identify and recall the "facts" of the accident. However, since this case did not involve a fatality, no such paint markings where W.A.G.'s vehicle allegedly

left or reentered the roadway were made for this accident and no reconstruction was performed by the MHP. Further, although Taylor and the assisting troopers did take twenty-seven photographs at the accident scene, there were no photographs taken of the areas where W.A.G.'s vehicle supposedly left and reentered the roadway prior to the rollover sequence. Likewise, no photographs were taken of any area of allegedly disturbed gravel on the side of the roadway which would indicate W.A.G.'s vehicle left the roadway.

The individuals who will offer opinions concerning the departure of W.A.G.'s vehicle from the roadway are Taylor, Smith and Toyota's retained reconstruction expert, Lee Carr. According to Graves, Carr's opinions, in part, emanate from the so-called fruits of the poisonous tree, i.e., the assumptions of Taylor, and by ratification, Smith. Graves also argues that while Smith assisted in the accident investigation, he was not the primary investigating officer of this accident. Thus, according to Graves, the allegedly speculative opinions of Taylor, Smith and Carr concerning the departure of W.A.G.'s vehicle from the roadway must be excluded. The court will only deal with the opinions of Taylor and Smith in this order, Carr will be dealt with in a separate opinion.

On March 1, 2011, Toyota filed its Rule 26(a)(2) Designation of Expert designating Trooper Lance Taylor, Mississippi Highway Patrol, as one of its expert witnesses. The Designation, in part, states as follows:

> TMC and TMS anticipate calling Trooper Lance Taylor as a witness to testify at the trial of this case consistent with his accident report and deposition. Information Trooper Taylor may be called upon to present at trial may include incidental opinions, based on scientific, technical, or other specialized knowledge, arrived at as a result of his training in and familiarity with, accident investigations. Therefore, and as a measure of precaution, TMC and TMS further identify Trooper Taylor and any other

law enforcement personnel who may have responded to the scene of this crash as individuals who may be used at trial to present evidence under Rule 702, 703 and/or 705 of the FEDERAL RULES OF EVIDENCE. A copy of his accident report is attached as Exhibit "J". TMC and TMS also identify and incorporate his deposition testimony by reference.

Among the opinions provided by Trooper Taylor in his Uniform Crash Report and his deposition are:

1. W.A.G.'s vehicle ran off the roadway to the right and overcorrected to the left causing it to overturn;

2. A contributing circumstance of this accident was W.A.G.'s failure to keep a proper lookout/run off road;

3. W.A.G.'s vehicle traveled off road for a distance greater than 20 feet before reentering the roadway, overcorrecting to the left, and overturned; and

4. An area of disturbed gravel off the roadway was caused by W.A.G.'s vehicle.

An identical designation and proffer of opinions was tendered by Toyota in regard to Trooper Smith. However, Toyota has proffered an additional opinion on behalf of Smith that "Due to the topography of the area surrounding the accident scene, the view of approaching westbound traffic of the accident scene would be impaired by a hill at the accident scene."

## ADMISSIBILITY OF EXPERT TESTIMONY

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial

reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule was that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial court in determining whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not

exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171. Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Id.* at 1176. In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." *Id.* at 1177.

This court has been instructed by *Kumho*, interpreting *Daubert,* that the opinions and conclusions stated by Troopers Taylor and Smith are not the only objects of the relevancy and reliability determination. Indeed, the court is also required to determine the reliability of their basis for arriving at those conclusions and opinions. 119 S.Ct. at 1177.

The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer

review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community. This court recognizes that the factors listed above may or may not be relevant to a determination of the issues before it. Therein lies the flexibility of the gatekeeper responsibility as mandated by the Supreme Court.

As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility. *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997). In this age of "post-*Daubert*" sensibility, especially as enlightened by the United States Supreme Court's pronouncements in *Kumho*, the trial courts have been instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert*, and the many cases applying *Daubert* including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp.* 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007) (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

Therefore, before either Trooper Taylor or Trooper Smith may testify, this court must, at a minimum, determine that (1) each is qualified to offer opinion testimony; (2) each has employed sound methodology in forming his opinions; (3) the data each one relied on in forming his opinions is reliable; and, most importantly, (4) the opinion testimony offered by each one will assist the trier of fact to understand the evidence or to determine a fact in issue. Of course, the burden of establishing the admissibility of

Taylor's and Smith's testimony falls on Toyota as the proponent of that expert testimony. *Moore v. Ashland Chem., Inc.*, 151 F.3d at 276; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *Daubert*, 509 U.S. at 592, n. 10.

Finally, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403. *See Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996). "[E]xpert evidence can be both powerful and quite misleading . . . [Rule] 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## ANALYSIS

As stated above, Trooper Taylor was the primary investigating officer of this accident and authored the Mississippi Uniform Crash Report and Trooper Smith assisted Taylor's investigation. Graves contends that although Toyota's Designation is somewhat vague, it is anticipated that Toyota will attempt to elicit opinions from Taylor and Smith concerning the movement, speed, mechanics, driver responses and/or vehicle handling of W.A.G.'s vehicle.

Specifically, Graves anticipates that Toyota will attempt to elicit opinions from Taylor and Smith that the vehicle ran off the roadway to the right at an unknown point west of the accident scene, traveled a distance of greater than twenty feet off the

roadway and then abruptly steered to the left, overcorrecting, causing the vehicle to roll over multiple times.  Additionally, Graves believes that Smith may also attempt to opine that the topography surrounding the accident scene adversely impacted the view of approaching westbound traffic.  Graves contends that neither Trooper Taylor nor Trooper Smith are qualified to give such opinions, that the opinions are not reliable and will not assist the trier of fact and that they are more prejudicial than probabitve.

     At the time of this accident, Taylor possessed four years of experience and Smith possessed approximately eleven years of experience with the Mississippi Highway Patrol.  Neither has ever received training in accident reconstruction and each candidly admits that he does not consider himself to be an accident reconstructionist.  It is abundantly clear to the court that neither Taylor nor Smith is qualified to render expert opinions in this case as either an accident reconstructionist or a biomechanical engineer, which Toyota seems to tacitly acknowledge.

     A case with similar facts is *Moreno v. W. R. Davis Produce, Inc.*, 2007 WL 1731139 (Western Dist. TX, July 14, 2007).  Relying in part upon the rationale of *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999), the Court in *Moreno* determined that a Texas State Trooper was not qualified to provide opinion evidence in the field of accident reconstruction. Specifically, the Court found that Trooper Salaz (1) did not possess a college diploma of any kind; (2) never taught a class on accident reconstruction; (3) never authored a paper in the field of accident reconstruction; (4) made no calculations related to the accident; (5) took no photographs related to his specific opinion that gouge marks were made by the Plaintiffs' car; (6) held no certificate in accident

reconstruction; and (7) the Texas Department of Public Safety assigned an accident reconstructionist to conduct a full scale reconstruction when necessary (i.e., when a traffic fatality occurred). While the Court acknowledged that Trooper Salaz's credentials may qualify him to "investigate an accident" they do not qualify him as an accident reconstruction expert. "Salaz's credentials certainly qualify him to investigate an accident (that is, after all, the essence of his job by virtue of being a Trooper). However, such does not qualify him as an accident reconstruction expert." *Id.* *See also, Rosado v. Deters*, 5 F.3d 119 (5th Cir. 1993) (expert not qualified to provide opinion testimony as accident reconstructionist since he had received no such training in the 23 years prior to accident).

     Toyota admits that neither Taylor nor Smith are qualified as accident reconstructionists. Nevertheless, Toyota insists that both of them are qualified as "accident investigators," and as such, should be allowed to offer the opinions and conclusions set forth above regarding how this accident occurred. However, the labeling by Toyota is of no significance if at the end of the day the opinions/conclusions sought to be elicited emanate from technical or specialized knowledge which neither Taylor nor Smith possess through education, training or experience.

     Toyota argues that neither Taylor nor Smith will proffer expert opinions relating to a reconstruction of the subject accident, but will only offer conclusions as to why the rollover occurred. This court cannot buy into the argument that there is an important distinction between an opinion reconstructing how the rollover occurred and a "conclusion" as to how the rollover occurred. Both Taylor's and Smith's opinions and

conclusions are (1) W.A.G. exited the paved roadway (2) traveled on the graveled area a distance (3) overcorrected and (4) experienced a rollover of his vehicle.

The parties have separately retained accident reconstruction experts and the reports of the accident reconstructionists embody various aspects of the subject accident including, but not limited to, the path of travel of the vehicle prior to the accident; the location of the vehicle prior to the subject accident; the handling of the vehicle prior to the subject accident; whether the vehicle was on-road or off-road at any point during the accident sequence; the dynamics of the steering input by the operator of the vehicle prior to the subject accident, that is, did he overcorrect; the events that initiated the rollover sequence; the position of the vehicle at the time the rollover sequence was initiated; the position of the vehicle during the rollover sequence; the number of rollover events and the ultimate resting place of the vehicle.  Toyota suggests that there is a difference between the accident reconstructionist who offers opinions about the path of travel; the location of the vehicle and whether the vehicle overcorrected and the accident investigator who offers conclusions on the same issues based on an accident report.  The court cannot agree with this argument.

Neither Taylor nor Smith collected or considered any empirical data and did not perform any scientific analysis of any working hypothesis.  Graves argues that they merely speculated as to the existence of a disturbed area of gravel, the location of which is not known and not documented in any measurements or photographs, and the cause of that disturbance.  That is the crux of the matter.  They each viewed some disturbed gravel at some unknown point from the collision and each concluded that it

was caused by the W.A.G. vehicle. Based on that assumption, they each concluded that W.A.G. ran off the road, steered back into the road, overcorrected and set the accident sequence into motion. That is speculation built upon assumption. Neither Taylor nor Smith have been shown to be qualified by education, training or experience to render opinions on causation based on the evidence they observed at the scene of this accident. They are certainly qualified to testify as to what they observed at the scene, but they will not be allowed to testify as experts to any conclusions they reached as a result of observing that evidence.

In fairness, Toyota contends that neither Taylor nor Smith were designated to provide opinions reconstructing the accident. Instead, Toyota claims that Taylor and Smith will proffer certain conclusions they reached in the investigation consistent with the crash report Taylor prepared. Toyota opted, out of an abundance of caution, to designate Taylor and Smith as experts in view of their investigation of the crash and to the extent their "conclusions" might be considered expert testimony by virtue of the fact that it might require scientific, technical or other specialized knowledge under Rule 702, 703 or 705, F.R.E. Rightfully anticipating a problem tendering them as experts, Toyota argues in its briefing that Taylor's and Smith's anticipated testimony as to their observations, findings and conclusions would be admissible under Rule 701 F.R.E. as opinion testimony by a lay witness.

Rule 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful

to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701 F.R.E.

Under the rule, a lay witness can testify to matters within their direct personal knowledge and to matters rationally based on the perception of the witness. An opinion is rationally based on perception if the opinion is the sort that a normal person would form and "no irrational leaps of logic" are required to sustain it. *See Lynch v. City of Boston*, 180 F.3d 1, 15 (1st Cir. 1999). *See also Mississippi Chemical Corp. v. Dresser-Rand Co.*, 287 F.3d 359 (5th Cir. 2002) (a lay opinion must be based on rational perception and must be one that a normal person would form from those perceptions); and *U.S. v. Riddle*, 103 F.3d 423 (5th Cir. 1997). Moreover, Rule 701 F.R.E. demands more than a finding that the witness has perceived something first-hand; rather, it requires that the witness' perception provide a truly rational basis for the opinion. Rule 701 permits lay opinion testimony only when all three of the Rule's standards for admissibility are satisfied.

The first requirement under Rule 701 is the testimony/opinions must be rationally based on the perception of the witness. Strained inferences do not satisfy the standard. Likewise, mere assumptions are not rendered admissible by the rule. *Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999). Graves argues that the problem here is that Taylor's and Smith's opinions are riddled with assumptions, especially the assumption concerning the disturbed gravel and the nexus to W.A.G.'s vehicle. An opinion based upon the assumption of the existence of an important fact cannot meet the Rule 701 test.

Indeed, Taylor was so uncomfortable about the source of the disturbed gravel, he

opted not to memorialize his findings by either photographs of the area, paint markings of the area or inclusion of any reference to it in the Uniform Crash Report.  He admitted that there was uncertainty whether or not the particular disturbed gravel related to the subject accident or some other vehicle going off the road.  Taylor testified "but the reason why I don't take pictures way back there and I do today is simply because vehicles run off the road all the time."  *See Washington v. Department of Transportation*, 8 F.3d 296 (5th Cir. 1993) (testimony based on a lay witness's perception means that the testimony is not the subject of speculation or an assumption that a particular fact is true).  Nor did Smith make any measurements or photographs of the disturbed gravel and no one has been able to establish the exact proximity of the disturbed gravel to the initiation of the rollover sequence or to the final resting place of the vehicle.  Taylor merely testified that the disturbed gravel was more than twenty feet back up the roadway from the overturned vehicle.

Toyota contends that since Graves does not challenge the other accident scene findings of Taylor and Smith such as skid marks and gouge marks, they are in no position to challenge the conclusions about the disturbed gravel and its alleged connection to causing this accident.  Graves responds that the answer is quite simple, and the court agrees.  Taylor and Smith can testify that they saw and photographed skid marks and gouge marks.  They cannot testify as to any opinions/conclusions that the skid marks and the gouge marks were a result of over-correction of the vehicle nor can they offer opinions/conclusions as to which tire on the W.A.G. vehicle caused either the skid marks or the gouge marks.  There is a marked difference between observations and photographs of and paint marking skid marks and gouge marks not in dispute, and

the proposed testimony of a witness who speculates or assumes as to the source of a disturbed area of gravel. More importantly, there is no disagreement between the parties as to the source of the skid marks and the gouge marks. This is a single vehicle accident and the presence of skid and gouge marks are not in dispute.

The second requirement for admission of lay opinion testimony is that it must be helpful to the jury. If the testimony is vague and general, it must be excluded. To meet the requirement of helpfulness, a lay opinion must do more than bear on the issues in the case, it must be reasonably reliable. Rule 701 F.R.E. has been amended to eliminate the risk that the reliability requirements of Rule 702 F.R.E. will be evaded through the simple expedient of proffering an expert in lay witness clothing.

Under the amendment, a witness' testimony must be scrutinized under the standards regulating expert opinion to the extent that the witness is providing testimony based on technical or other specialized knowledge within the scope of Rule 702 F.R.E. The commentary to Rule 701 F.R.E. provides that by the 2000 amendment to Rule 701, opinion testimony by a lay witness is properly excluded under the Rule if the opinion is more appropriately within the province of an expert witness. The amendment is meant to brighten the line between lay and expert opinion testimony to prevent persons from circumventing the requirements for expert testimony by calling experts in the guise of lay persons. In a particular case, the distinction between fact and opinion depends upon whether the lay witness' testimony relates to a critical issue or a peripheral matter: "In the outer circle of collateral facts, near the rim of relevance, evidence in general terms will be received with relative freedom, but as we come closer to the hub of the issue, the courts have been more careful to call for details instead of inferences. 1

*McCormick* § 12, at 47.

The reconstruction opinion testimony of law enforcement offers, who are not competent to testify as accident reconstructionists, violates the evidentiary standards of Rule 701 F.R.E. *Duhon v Marceaux*, No.00-31409, 33 Fed. Appx. 703 (5th Cir. 2002) (per curiam) (unpublished) (finding that police officers' opinion testimony exceeded the scope of permissible lay opinion testimony under Rule 701 F.R.E.). The *Duhon* court held that, "[a]s a general rule, police officers' lay opinion as to the cause of an automobile accident formed by viewing subsequent evidence at the scene are excluded under Rule 701 F.R.E." In *Duhon*, the Motion in Limine did not address the admissibility of the accident report, but the district court specifically stated that the report could be used as long as Duhon redacted those portions of the report that expressed an opinion about the cause of the accident. That is the holding of this court.

Taylor's, and by ratification, Smith's, proposed testimony regarding the "disturbed gravel" and the opinion that W.A.G. "ran off the roadway to the right and overcorrected" resulting in the cause opinions set forth in the Uniform Crash Report that W.A.G. failed to "keep a proper lane/run off road" is an attempt to offer opinions, by an unqualified patrolman, that W.A.G. was negligent in the operation of his vehicle. Consequently, Taylor and Smith are precisely the type of "expert in lay witness clothing" that Rule 701's commentary cautions against and this is precisely the type of unreliable lay opinion testimony that must be excluded. Moreover, Taylor's and Smith's testimony would be overly prejudicial to Graves under Rule 403 F.R.E. as his appearance at trial in his official highway patrol uniform to "instruct" the jury on after the fact opinions Taylor frankly admits were the result of assumptions and which assumptions were so

-18-

questionable at the time of the accident investigation that he did not photograph or mark the area in question.

Graves argues that to even allow Taylor to simply state he observed disturbed gravel off the roadway and nothing more provides no relief for the Plaintiffs and will exacerbate the problem.  The clear inference from such testimony will be that since this is a one vehicle accident, the vehicle operated by W.A.G. must have caused the disturbed gravel.  Graves insists that the Plaintiffs could not cross examine Taylor or Smith without opening the proverbial door leading to additional improper testimony and further undue prejudice and that this is the type of prejudice Rule 403 F.R.E. serves to prevent.  The court disagrees.

Clearly, both Taylor and Smith can testify as to what they saw at the accident scene.  They will not be allowed to testify as to any opinions or conclusions they reached about what caused this accident relative to the W.A.G. vehicle leaving the roadway, overcorrecting or not keeping in the proper lane of travel.  To the extent that the Uniform Crash Report contains any such conclusions or opinions, they will be redacted and not presented to the jury.  The issue of the existence of disturbed gravel in some proximity to the wreck is merely a question of credibility not admissibility.  Both direct examination and cross-examination can be handled deftly to avoid any untoward opinions being adduced in front of the jury which would trespass on the ruling of the court.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Exclude Opinion Evidence to be Offered by Lance Taylor **[#135]** and the Motion to Exclude Opinion Evidence to be Offered by David Smith **[#137]** filed on behalf of the plaintiffs,

Wayne and Mary Graves, for and on Behalf of W.A.G., a minor is granted as set forth herein.

SO ORDERED AND ADJUDGED this the 30th day of September, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE