# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

| | |
|---|---|
| **WAYNE AND MARY GRAVES, FOR AND ON BEHALF OF W.A.G., A MINOR** | **PLAINTIFFS** |
| **VERSUS** | **CIVIL ACTION NO. 2:09cv169KS-MTP** |
| **TOYOTA MOTOR CORPORATION AND TOYOTA MOTOR SALES, USA, INC.** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Exclude Proposed Expert Testimony of Lee Carr, P.E. **[#139]** filed on behalf of the plaintiffs, Wayne and Mary Graves, for and on Behalf of W.A.G., a minor ("Graves"). The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion should be granted in part and denied in part. The court specifically finds as follows:

## BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims. The accident occurred on December 31, 2008, at approximately 8:20 a.m. on U.S. Highway 84 in Jones County, Mississippi. This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4-Runner traveling east. The posted speed limit was 65 miles per hour. As W.A.G. approached the intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness

testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began to yaw and then roll over multiple times.  Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

There are three known eyewitnesses to the subject accident: Barbara Jenkins and Marva Armond, traveling in the same vehicle in the opposite direction from W.A.G. (westerly); and Jesse Gass, who was traveling in the same direction (easterly) as W.A.G., and was behind the vehicle operated by W.A.G.  None of the three eyewitnesses observed W.A.G. leave the paved roadway.  The deposition testimony of Marva Armond establishes that she observed W.A.G. on the roadway with both hands on the steering wheel prior to the sudden steering input to the left and the eventual rollover.  Jesse Gass testified that he observed W.A.G. engage in a sudden steering input to the left and observed the W.A.G. vehicle in a rollover sequence.  In response to questioning about the event, Gass testified that even though he was not paying close attention to W.A.G.'s vehicle prior to the wreck, he did not see W.A.G.'s vehicle leave the roadway because "in my mind, if he had swerved off the side of the road, there would have been a cloud of dirt without a doubt, because there's that gravel there."

Officer Lance Taylor ("Taylor"), a Mississippi Highway Patrol Trooper First Class with four years experience at the time of the accident, was dispatched to the accident scene.  He was the primary investigating officer and remained at the accident scene approximately forty minutes. Officer David Smith ("Smith"), also an officer with the MHP, was at his home in close proximity to the accident so he traveled to the scene to offer assistance to Taylor in investigating and processing the accident.  Later that day, Taylor

completed the State of Mississippi Uniform Crash Report. In the Uniform Crash Report and in his deposition, Taylor offers an opinion that the 1995 4-Runner "ran off the roadway to the right and overcorrected." Taylor also opines in the Uniform Crash Report that a contributing circumstance of this accident was W.A.G.'s "failure to keep a proper lane/run off road." Even though Smith did not complete any portion of the Uniform Crash Report, he has testified that he agrees with Taylor's opinions and adopts them as his own. In fact, Smith's involvement and participation in the investigation of this accident was extremely limited as he did nothing more than mark certain areas of the accident scene with orange spray paint and direct traffic when necessary.

Toyota proposed to offer opinions of three individuals concerning the departure of W.A.G.'s vehicle from the roadway; Taylor, Smith and Toyota's retained reconstruction expert, Lee Carr ("Carr"). According to Graves, Carr's opinions, in part, emanate from the so-called fruits of the poisonous tree, i.e., the assumptions of Taylor, and by ratification, Smith. Acording to Graves, the allegedly speculative opinions of Taylor, Smith and Carr concerning the departure of W.A.G.'s vehicle from the roadway must be excluded. The court has excluded the opinions and conclusions of Taylor and Smith in a separate order, thus, only the issue of Carr's opinions will be dealt with in this opinion and order.

On March 1, 2011, Toyota filed its Designation of Experts, in which it designated Lee Carr, P.E. as an expert witness. Carr is a Registered Professional Engineer in the State of Texas. According to his report, he has "evaluated the basic causes, conditions and circumstances of the crash that led to the referenced lawsuit. [He has] also evaluated claims raised in plaintiffs' petition that relate to the handling and stability of

the Toyota 4Runner including that it had a 'high center of gravity which created an unreasonable propensity to rollover.'"

As a result of his investigation, Carr opines that the subject accident/rollover was the result of driver error, rather than any defects in the design and/or manufacture of the 1995 Toyota 4Runner. Specifically, Carr opines that three primary factors caused or contributed to the overturn of the Toyota 4Runner: (1) that W.A.G. "allowed the vehicle to depart the pavement to the right hand side and onto the gravel/dirt/grass shoulder"; (2) followed by an abrupt turn of the steering wheel to the left; and, (3) "inadequate rear tire pressure," which contributed to the occurrence of the vehicle sliding prior to overturning. These opinions are the subject of the instant Motion.

## **ADMISSIBILITY OF EXPERT TESTIMONY**

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule was that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial court in determining whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that

question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171. Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Id.* at 1176. In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." *Id.* at 1177. This court has been instructed by *Kumho*, interpreting *Daubert,* that the opinions stated by Carr are not the only objects of the relevancy and reliability determination. Indeed, the court is also required to determine the reliability of his basis for arriving at those conclusions and opinions. 119 S.Ct. at 1177.

The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community. This court recognizes that the factors listed above may or may not be relevant to a determination of the issues before it. Therein lies the flexibility of the gatekeeper responsibility as mandated by the Supreme Court.

As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over

the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility. *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997). In this age of "post-*Daubert*" sensibility, especially as enlightened by the United States Supreme Court's pronouncements in *Kumho*, the trial courts have been instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert*, and the many cases applying *Daubert* including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp.* 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th

Cir. 2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007) (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

Therefore, before Lee Carr may testify, this court must, at a minimum, determine that (1) he is qualified to offer opinion testimony; (2) he has employed sound methodology in forming his opinions; (3) the data he relied on in forming his opinions is reliable; and, most importantly, (4) the opinion testimony offered by him will assist the trier of fact to understand the evidence or to determine a fact in issue. Of course, the burden of establishing the admissibility of Carr's testimony falls on Toyota as the proponent of that expert testimony. *Moore v. Ashland Chem., Inc.*, 151 F.3d at 276; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *Daubert*, 509 U.S. at 592, n. 10.

Finally, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403. *See Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996). "[E]xpert evidence can be both powerful and quite misleading . . . [Rule] 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. To this end, an expert opinion's

"lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

**ANALYSIS**

Even though Graves has not attacked the qualifications of Carr, the court deems them relevant to its ultimate conclusion regarding the admissibility of his opinions. Lee Carr is well qualified in his field. He holds a Bachelor of Science and a Master's in Mechanical Engineering and is a Licensed Professional Engineer in the State of Texas. He has had over forty years of engineering experience in motor vehicle related areas, including experience in design, vehicle dynamics, crash reconstruction and injury causation. Sixteen years of his experience was as an engineer at Ford Motor Company.

For the past thirty years, Carr has worked as consulting engineer in related fields, including vehicle testing, crash investigation and vehicle design. He has conducted tests and evaluations of Toyota vehicles, including a 1995 Toyota 4Runner such as the one involved in this crash, as well as other makes of utility vehicles and light trucks sold in the United States. He has specifically tested Toyota 4Runners and competitor vehicles to evaluate steering, handling and stability capabilities.

In this case, Carr has reviewed the file materials including documents from Toyota and has reviewed and studied the Mississippi Uniform Crash Report, photographs taken at the scene and the deposition testimony of the State Troopers and

fact witnesses. He has inspected the accident scene including a site drive with an exemplar 1995 Toyota 4Runner, has inspected the subject W.A.G. vehicle twice and has reviewed rollover resistance testing of a 1995 Toyota 4Runner. Based on his investigation and review of these materials and evidence, Carr completed a reconstruction of this crash. He then analyzed the reconstruction and other opinions offered by Graves' experts, Mickey Gilbert and David Bilek, and explained why he disagreed with their findings. He supported his disagreement with engineering analysis and other information.

Graves attacks two of Carr's opinions: 1) Carr's opinion that the W.A.G. vehicle left the roadway prior to the crash based on his purported reliance on Trooper Lance Taylor's conclusion that the W.A.G. vehicle left the roadway; and 2) Carr's opinion related to alleged under-inflation of the right rear tire of the W.A.G. vehicle.

Graves spends a considerable amount of time rehashing the underpinnings of Trooper Lance Taylor's conclusions and opinions in an effort to lash Carr's opinions thereto. Graves does correctly argue that expert opinions ordinarily cannot be based upon the opinions of others, whether those opinions are in evidence or not. *See American Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985). Moreover, expert testimony relying on the opinions of others should be rejected if the testifying expert's opinion is too speculative or the underlying basis is faulty. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000).

Additionally, "[i]f the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any

-10-

opinion drawn from that data is unreliable." *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (court property excluded expert's opinion because it was based upon incorrect, altered facts and speculation designed to bolster the defendant's position); *Torch Energy Mktg.*, No. Civ. A. H-01-3402, 2003 U.S. Dist. LEXIS 20941, at *31 (S.D. Tex. Mar. 31, 2003); *In re Air Crash Disaster*, 795 F.2d 1230, 1235 (5th Cir. 1986). When an expert's opinion is not preceded by facts in evidence but only speculation or conjecture, his opinion is unreliable. *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990); *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). However the court has, of course, excluded the opinions and conclusions of Troopers Taylor and Smith as to how this accident occurred. Thus, if Taylor's opinions and conclusions were the only, or even primary, basis of Carr's opinions, Graves' argument would carry the day. Unfortunately for the plaintiffs, such is not the case.

Toyota argues that Carr does not rely on Taylor's findings at the scene to support his reconstruction of the accident and his conclusion that W.A.G. left the roadway before the accident. Toyota points out that Carr personally inspected the scene and inspected the accident vehicle twice as well as viewing the photographs of the scene and reviewing the statements and deposition testimony of all the witnesses and investigating officers. Contrary to Graves' argument, Toyota contends that Carr's opinions merely corroborate the conclusions of Taylor. The court agrees, even though it has concluded that Taylor's opinions are objectionable and should be excluded. Thus Carr will not be allowed to present any testimony regarding the conclusions and opinions of either Trooper Taylor or Trooper Smith regarding how they think the

accident occurred in conformity with the court's previous order on that issue.

Toyota has demonstrated that Carr is imminently qualified by education, training and experience to offer the opinions rendered in this case based upon his independent investigation and analysis of the accident scene. To the extent that Carr would attempt to offer any evidence of Taylor's excluded testimony, such would be prohibited. That does not diminish Carr's ability to testify regarding his reconstruction of this accident based upon his own independent investigation and analysis.

While tacitly acknowledging Carr's independent investigation and analysis, Graves nevertheless argues that Toyota and Carr fail to demonstrate why the methodology used by Carr is reliable, and how Carr applied the principles and methods reliably to the facts of this case. Graves insists that Toyota simply jumps from a discussion of the observations Carr made to the conclusions he reached without further explanation. This argument ignores the detailed report and supplement provided by Carr as well as his extensive education, training and experience. Graves and the experts hired on behalf of the plaintiffs might disagree with Carr's opinions, but that does not make them unreliable. The issues raised by Graves are not ones of admissibility, but rather of credibility. The court is certain that Graves' able counsel will conduct rigorous cross-examination to test Carr's methodology and its application to the facts of this case.

The second opinion of Carr attacked by Graves is his conclusion that the right rear tire of the W.A.G. vehicle was under-inflated and that such contributed to the accident. Carr provides two bases for his opinion that inadequate rear tire pressure

contributed to the rollover sequence. First, he states that the "depth of the gouge from the rear wheel was substantially greater than that of the front wheel. Secondly, he opines that "physical evidence of the vehicle's unusually high yaw rate" is "consistent with an improperly low tire pressure in that tire." Carr freely admits that he knows "of no means by which to specifically quantify the likely pressure." Thus, Graves argues that Carr's opinion regarding inadequate tire pressure is speculative and unreliable.

Graves has designated Mickey Gilbert, P.E., and David J. Bilek, P.E., as their accident reconstruction experts in this matter. Both Gilbert and Bilek have opined that the subject accident was an "un-tripped rollover" to the passenger's side of the vehicle following a series of turning maneuvers. Although Gilbert and Bilek agree that the right-side wheels of the Toyota 4Runner scraped or gouged the pavement during the rollover sequence, they further opine that the scraping occurred after the vehicle was already committed to rollover, and that the scraping did not "trip" the vehicle or otherwise contribute to the rollover sequence, contrary to Carr's conclusion.

In support of their opinion relative to wheel rim gouging, Gilbert and Bilek rely on their experience in the field of accident reconstruction, physical evidence at the accident scene, as well as "[t]est data and a published paper by Mechanical Systems Analysis, Inc. and Gilbert Engineering LLC, (a cited paper on rim gouge in the SAE Accident Reconstruction book)." "The primary finding of the study is that shallow rim gouging does not cause rollover and was sometimes found to actually inhibit rollover." Gilbert further cites the results of a NHTSA rollover test, and hundreds of other rollover accidents he has personally inspected where there have been rim scrapes or gouges

-13-

that do not play any role in "tripping" the vehicle in the manner Carr suggests.  Gilbert provides several specific examples in his report.

In his report, Carr identified two circumstances which led him to conclude that the right rear tire was inadequately inflated: 1) the high yaw rate, and 2) the depth of the right rear wheel gouge.  Carr then goes into an extensive analysis of yaw rate and the possible reasons for what occurred in this wreck.  He methodically excludes untenable or unlikely causes and arrives at his conclusion that the unusually high yaw rate was caused by the right wheels of the W.A.G. vehicle being off the roadway prior to the sudden left turn and was exacerbated by low inflation in the right rear tire.

The court understands that Graves' experts disagree with Carr, but that does not make Carr's opinions inadmissible or unreliable, only prejudicial to Graves' theory of the case.  Simply put, if evidence is not prejudicial to one party or the other, it is not relevant.  Thus, the court concludes that Lee Carr is "qualified as an expert by knowledge, skill, experience, training, or education" and that he "may testify thereto in the form of an opinion, or otherwise" because  "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Rule 702 F.R.E.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Exclude Proposed Expert Testimony of Lee Carr, P.E.  **[#139]** filed on behalf of the plaintiffs, Wayne and Mary Graves, for and on Behalf of W.A.G., a minor is granted in part to the extent that Lee Carr shall not be allowed to testify or in any way bring before the jury

any information relative to the opinions of Troopers Lance Taylor or Trooper David Smith which have been excluded by the court regarding their opinions that the W.A.G. vehicle ran off the road, overcorrected or was not in its proper lane of travel, nor will any expert report offered by Lee Carr contain any reference to the precluded opinions of Troopers Taylor and/or Smith;

IT IS FURTHER ORDERED AND ADJUDGED that in all other respects, the Motion is denied.

SO ORDERED AND ADJUDGED this the 3rd day of October, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE