# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**WAYNE AND MARY GRAVES, FOR AND ON**
**BEHALF OF W.A.G., A MINOR**     **PLAINTIFFS**

**VERSUS**     **CIVIL ACTION NO. 2:09cv169KS-MTP**

**TOYOTA MOTOR CORPORATION AND**
**TOYOTA MOTOR SALES, USA., INC.**     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#133]** filed on behalf of the defendants, Toyota Motor Corporation and Toyota Motor Sales, USA, Inc. ("Toyota"). The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion should be granted in part and denied in part. The court specifically finds as follows:

## BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims. The accident occurred on December 31, 2008, at approximately 8:20 a.m. on U.S. Highway 84 in Jones County, Mississippi. This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4Runner traveling east. The posted speed limit was 65 miles per hour. As W.A.G. approached the

intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began to yaw and then roll over multiple times.  Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

On August 26, 2009, the plaintiffs, Wayne and Mary Graves, for and on Behalf of W.A.G., a Minor, ("Graves")  filed their Complaint against the defendants, alleging, in part, that Toyota negligently failed to design and/or manufacture the 1995 Toyota 4Runner, specifically, the roof system and its supports, to eliminate an unreasonable risk of injury to the vehicle's occupants from roof crush injury during a rollover.  Graves also alleges that the 4Runner lacked sufficient handling and stability characteristics that might have prevented the rollover.  As a result of claimed roof crush during the rollover sequence, Graves alleges that W.A.G. "sustained permanent and debilitating spinal cord injuries which have rendered him permanently paralyzed from the sternum to the lower extremities."

Graves seeks actual damages for: (a) medical, therapeutical and related expenses, past, present and future; (b) permanent loss of wage earning capacity; (c) physical pain and emotional suffering, past, present and future; (d) permanent disability and the resulting anguish, hardship and expense of W.A.G.'s paralysis and confinement to a wheelchair; (e) life care expenses; and, (f) other damages as permitted by law. Graves also claims entitlement to punitive damages.

Toyota filed the present Motion for Summary Judgment contending that summary judgment is warranted on three grounds: (1) Toyota has filed a motion to exclude the

testimony of Graves' injury causation expert, Dr. Martha Bidez, which, if granted, would prevent Graves from establishing that W.A.G's injury was proximately caused by a roof defect, thus making summary judgment on Graves' roof defect claim appropriate; (2) Graves' breach of warranty claim is time barred under Miss. Code Ann. § 75-2-725; and, (3) Toyota is are entitled to summary judgment on Graves' punitive damages claims as Graves cannot provide any proof of the requisite conscious, deliberate, or intentional conduct as required under Miss. Code Ann. § 11-1- 65.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment

cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

Toyota has filed a separate motion to exclude the testimony of the Graves' injury causation expert, Dr. Martha Bidez.  In the present motion seeking summary judgment,

Toyota first argues that if Dr. Bidez is excluded from testifying at trial, Graves cannot establish causation linking roof deformation to W.A.G.'s injuries, thus, the roof defect claims must be dismissed as a matter of law. However, the court has denied the separate motion of Toyota to exclude Dr. Bidez's testimony, therefore this portion of the motion will be overruled. Additionally, Graves has conceded Toyota's motion on their breach of warranty claims as being time-barred. Thus, Toyota is entitled to summary judgment on this issue. Consequently, the only issue left for decision in this motion is punitive damages.

It is well settled in Mississippi that punitive damages are to be assessed only in extreme cases. See *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985). "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss.1988). Further,

> [a]s a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong. The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others.

*Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1215 (Miss.2000) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So.2d 226, 233 (1962)). See also, *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 442 (Miss.1999). "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the

case out of the ordinary rule." *Id.* (citing 15 Am.Jur., Damages, Sec. 265, p. 698). When deciding whether to submit the issue of punitive damages to a trier of fact, the court is required to examine the totality of the circumstances as established by the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard in order to justify the imposition of punitive damages. See *Ross-King-Walker, Inc. v. Henson*, 672 So.2d 1188, 1191 (Miss.1996).

Based on the foregoing well settled principles of law, the Mississippi Supreme Court has instructed that "in order for the issue of punitive damages to warrant jury consideration, [the plaintiff] must show that a question of fact exists as to whether the aggregate of [the defendants'] conduct . . . evidences willful or wanton conduct or the commission of fraud. *Bradfield v. Schwartz*, 936 So.2d 931, 937 (Miss. 2006). The *Bradfield* Court went on to discuss the statutory procedure for the determination of whether the issue of punitive damages should ultimately be presented to the jury. In so doing, the court quoted the language of Miss. Code Ann. § 11-1-65 which provides

> (1) In any action in which punitive damages are sought:
>
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
>
> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
>
> (c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.

> (d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65(1)(a)-(d). In *Bradfield,* the court held that once the jury returned a verdict for compensatory damages, the circuit court "should have automatically proceeded to the punitive damages phase of the trial," where "evidence concerning punitive damages [could] be presented separately at a subsequent evidentiary hearing." 936 So.2d at 940.

Graves asserts a "roof defect" or "roof crush" claim. Graves contends the roof structure of the 1995 4Runner vehicle was defectively designed such that it lacked sufficient roof crush resistance and alleges that Toyota knew well in advance of distribution of its 1995 4Runner that the vehicle was susceptible to rollover events and therefore preservation of the occupant compartment from roof intrusion was a significant safety issue.

Graves continues that the United States government realized the critical importance of preservation of space in the occupant compartment of vehicles during rollover events which resulted in the adoption of federal safety standards. Specifically, Federal Motor Vehicle Safety Standard (FMVSS) 216 was enacted in the 1970s. Although the standard did not initially apply to vehicles with a gross vehicle weight rating (GVWR) of less than 6,000 pounds, which would include the 4Runner, the standard changed in September of 1994. Effective September 1, 1994, FMVSS 216 was amended so that its application reached all light trucks and vans with a GVWR of less than 6,000 pounds, including the 1995 model 4Runner vehicle. *See* 49 CFR 571.216.

To comply with FMVSS 216, the vehicle's roof structure must not crush, or move, more than 5 inches when subjected to a force of 1.5 times its unloaded vehicle weight (UVW), or 5,000 pounds, whichever is less. The force is applied to either side of the forward edge of the vehicle's roof through a metal plate of a specified size. *Id.* The UVW of a vehicle is defined as the heaviest vehicle weight of that model with all available options.

Toyota contends that the 1995 4Runner vehicle complied with all federal standards, including FMVSS 216, at the time of its manufacture. Graves asserts that while Toyota has provided the UVW's and associated FMVSS 216 testing of previous and subsequent model year 4Runners, Toyota has consistently failed to provide the plaintiffs with the UVW and associated FMVSS 216 testing of the 1995 4Runner.

Toyota responds that the 1995 4Runner is part of the 1990-1995 model series, and the design and developmental process began prior to the 1990 model year vehicle appearing on the market. In fact, Toyota contends that the FMVSS 216 certificate for this model series 4Runner was completed in 1989. Toyota also argues that in 1996, Failure Analysis Associates conducted a FMVSS 216 test for a 1990 4Runner for litigation purposes which confirmed the certification test report from 1989. Thus, Toyota asserts that Graves misrepresents the evidence provided in this case by claiming that Toyota has not and cannot produce the FMVSS 216 testing for this 1995 4Runner.

Part of this confusion is caused by Toyota's response to a discovery request for this information when it responded, "TMC could not locate any documents that provide the exact UVW for the 1990-1995 U.S. bound 4Runner that was used for the FMVSS 216 testing given the passage of more than twenty years since this vehicle was

developed." Toyota also provided the results of the 1996 testing referenced above which apparently raised red flags with the plaintiffs. Thus, Graves points out that in light of Toyota's representations and purported inability to provide the UVW of the 1995 4Runner and any FMVSS 216 testing of a 1995 4Runner (4 door model), before distribution in October of 1995, Graves' expert, Stephen M. Forrest, concluded that Toyota failed to conduct the federally mandated FMVSS testing.

Toyota contends that this conclusion is unwarranted in light of the information provided regarding the 1989 testing and certification and other discovery information provided. Specifically, Toyota asserts that Graves is attempting to confuse the issue by criticizing the fact that the certification testing was performed on a two door 4Runner rather than a four door 4Runner; that the testing was not conducted specifically on a model year 1995 4Runner; and, that the exact UVW was not available for the Toyota certified testing some twenty years after the testing was conducted.

Toyota argues that it was not required to even meet the FMVSS 216 standard for the 1990-1995 series 4Runner when it conducted the certification test in 1989, and Graves agrees. Nevertheless, Toyota asserts that it completed the certification and confirmed the 4Runner met this standard. Thus, Toyota contends that when the FMVSS 216 standard was later made applicable to this vehicle, it had no further need for testing since it had already confirmed compliance of this model with that standard. According to Toyota, this "may" account for the fact that the specific UVW was not recorded for original certification. Nevertheless, Toyota contends that the UVW for this vehicle is easily determined by simple calculations and that Graves' expert's reliance on its absence is disingenuous.

Toyota also argues that the fact that the initial certification was preformed on a prototype for a 1990 model year vehicle is of no import because Toyota engineers can make an engineering judgment as to whether any changes in the course of the model series would necessitate additional testing. Likewise, Toyota contends the fact that testing was conducted on a two door rather than a four door 4Runner is not important for the same reason and further that it is well accepted that the roof on a four door vehicle would be as strong or stronger than a two door vehicle due to the additional support from the door frame design. These arguments are bolstered, according to Toyota, by the subsequent testing of Failure Analysis Associates in 1996 which was conducted on a production 1990 model 4Runner. Thus, Toyota maintains that Graves has failed to present a genuine issue of fact for resolution by the jury regarding punitive damages.

The court cannot agree with this assessment at this time. It may well be, as Toyota argues, that Graves has presented nothing but "smoke and mirrors" on this issue. Nevertheless, Graves has presented enough to avoid summary judgment. That being said, the court is doubtful that the issue will ultimately go to the jury, but that decision is best left until after the court has heard how the evidence plays out at trial.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#133]** filed on behalf of the defendants, Toyota Motor Corporation and Toyota Motor Sales, USA, Inc., is granted on the issue of Graves' breach of warranty claims but is denied in all other respects. A separate judgment on the breach of warranty claim will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 3rd day of October, 2011.

            *s/Keith Starrett*
            UNITED STATES DISTRICT JUDGE