IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**WAYNE AND MARY GRAVES, FOR AND ON**
**BEHALF OF W.A.G., A MINOR**                                                **PLAINTIFFS**

**VERSUS**                                           **CIVIL ACTION NO. 2:09cv169KS-MTP**

**TOYOTA MOTOR CORPORATION AND**
**TOYOTA MOTOR SALES, USA, INC.**                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' First Motion *In Limine* to Exclude Evidence Or Testimony Pertaining to Changes to Federal Safety Regulations and Ratings After 1995 **[#172]**.  The court having reviewed the motion, the response, the briefs of counsel, the authorities cited, the pleadings and exhibits filed, and being otherwise fully advised in the premises finds that the motion should be granted.  The court specifically finds as follows:

## BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims.  The accident occurred on December 31, 2008 on U.S. Highway 84 in Jones County, Mississippi.  This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4Runner.  As W.A.G. approached the intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began

to yaw and then roll over multiple times.  Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota"), have moved this court *in limine* for an order barring Plaintiffs, their witnesses and counsel from referring to or offering any of the evidence of changes to federal safety regulations or safety ratings, and internal or external communications between and among Toyota, the National Highway and Traffic Safety Administration ("NHTSA"), or other automakers regarding proposed changes in federal legislation or regulations, from *voir dire* to verdict.

Specifically, Toyota asserts that it anticipates that Plaintiffs will attempt to introduce information regarding changes made to Federal Motor Vehicle Safety Standard ("FMVSS") 216 after the subject vehicle was manufactured in 1995.  This could include references to the new FMVSS 216 standard, emails and other documents produced by Toyota in discovery related to that standard.  Toyota also anticipates that Plaintiffs will attempt to introduce evidence of other safety ratings and rankings enacted after 1995.

Toyota contends this evidence will be used by Plaintiffs to show that: (1) FMVSS 216 was changed in 2009; (2) the subject 1995 vehicle could not meet the current FMVSS 216 standard; (3) that Toyota opposed NHTSA's promulgation of changes to FMVSS 216; and (4) the subject 1995 vehicle would rate "Poor" on other safety rankings that exist today.  According to Toyota, Plaintiffs will use this in support of their claims that the roof strength of the subject vehicle was inadequate and that the

performance of the roof was causally related to W.A.G.'s injuries and that Plaintiffs may also utilize this in an effort to inflame the jury.

Toyota submits that such evidence must be excluded under FED. R. EVID. 401, 402, 403, 801, 802, and 805 because:

> (a) it has no tendency to make Plaintiffs' design defect claims more or less probable, and is therefore irrelevant;
>
> (b) it creates unfair prejudice, which substantially outweighs any threshold probative value that may exist, as well as creating confusion of the issues, and misleading of the jury, and creating undue delay and wasting judicial time; and
>
> (c) it largely consists of inadmissible hearsay unredeemed by any recognized exception to the hearsay rule.

## **FMVSS 216 CHANGES**

Approximately ten years after this vehicle was manufactured, on August 19, 2005, NHTSA– the governmental agency charged with implementing standards for vehicle safety, including standardized testing requirements– issued a Notice of Proposed Rulemaking ("NPRM") regarding FMVSS 216. Among other things, that NPRM sought to increase the strength to weight ratio requirement. NHTSA published the NPRM in the Federal Register in order to obtain comments from anyone, including members of the general public, who wished to provide input on the proposed increase. Along with other prominent automobile manufacturers, Toyota submitted its views on the new testing requirements to NHTSA as part of the rulemaking process. During this time frame, Toyota also had internal discussions and external meetings with fellow automobile manufacturers to review and discuss the proposed SWR increase.

Since that time, FMVSS 216 has been changed to require a strength to weight ratio of 3 to 1 for vehicles with a gross vehicle weight rating of 6000 pounds or less. It also requires that both sides of the roof (driver and passenger) are tested and meet a new headroom requirement. Starting September 1, 2012, manufacturers are required to have 25 percent of their vehicles comply with the new standard, with subsequent "phase-in" periods through September 1, 2015, when all manufacturers are required to have 100 percent of their vehicles comply with the new FMVSS 216.

According to Toyota, it anticipates that Plaintiffs and their experts will attempt to introduce evidence of the change in the FMVSS 216 standard and argue that: (1) the 1995 4Runner did not meet a federal safety standard enacted fourteen years later (and not in effect at the time of the subject crash); (2) the prior FMVSS 216 standard in existence at the time of the manufacture of the subject vehicle was inadequate; (3) the change in the standard supports Plaintiffs' and their experts' theories and claims of roof defect in this case.

Indeed, Plaintiffs assert that a significant issue that will be litigated at trial is whether W.A.G.'s injuries were the result of "diving" into the roof while the vehicle was inverted but before the roof had collapsed or, whether the roof collapsed into the driver's occupant compartment striking W.A.G. on the head and causing injuries. Further, Plaintiffs argue there exists a disagreement in the automotive litigation arena concerning the mechanism of cervical injuries in accidents involving rollover and roof crush and that Toyota, like other automobile manufacturers, have routinely and consistently espoused a "diving injury" phenomenon or, "axial loading" theory, as the cause of such injuries. Thus, according to Plaintiffs, Toyota's expert witnesses will

argue to the jury in this case that during the rollover sequence, W.A.G.'s head came into contact with the intact roof while the vehicle was inverted and that because of the continued momentum of W.A.G.'s torso, a downward force was applied to his cervical spine causing the cervical fractures. Concluding, Plaintiffs contend that it is Toyota's position that the deformed roof was not a causative factor of the injuries to W.A.G.

Conversely, Plaintiffs expert witness Martha Bidez will opine that forces generated during the diving injury phenomenon are insufficient to cause the cervical injuries W.A.G. sustained in this accident. Bidez will also opine that the cervical injuries occurred when the roof collapsed when impacting the ground and that force imparted to the cervical spine caused the cervical injuries. "As the driver's side impacted the ground during the first ¾ roll, the 4Runner's roof crushed into the driver's survival space imparting a dynamic, compressive force to W.A.G.'s head which exceeded 7000 N (1573 lb) at a rate of 7 mph or greater. This roof deformation was the root cause of W.A.G.'s MAIS 5 cervical spine injuries with resultant quadriplegia." *See* Report of Martha Bidez. Thus, Plaintiffs argue that the issue of injury causation is an issue that must be decided by the trier of fact.

Under Mississippi law, proof of damage following the use of a product is not sufficient to establish liability. *Creel v. General Motors, Inc.*, 233 So.2d 105, 109-10 (Miss. 1970); *Powe v. Wagner Elec. Sales Corp.*, 589 F.Supp. 657, 661 (S.D. Miss. 1984). "Manufacturers are not insurers and are under no duty to design a crashworthy, accident-proof or foolproof vehicle." *Cooper v. General Motors, Inc.*, 702 So.2d 428, 442 (Miss. 1997). *See also, Forbes v. General Motors Corp.*, 929 So.2d 958, 968 (Miss. App. 2005) *rev'd on other grounds*, 935 So.2d 869. Rather, the relevant focus in

a products liability case is on the condition of the product and/or the conduct of the manufacturer at the time of the product's manufacture or sale.

In general, a plaintiff makes out a *prima facie* case by "showing that a product was defective; that the defect caused the product to be unreasonably dangerous; that the unreasonably dangerous defect caused the harm complained of; and that the defective condition existed at the time the product left the control of the manufacturer or seller." *Id.* *See also* Miss. Code Ann. § 11-1-63(a); *3M Co. v. Johnson*, 895 So.2d 151, 165 (Miss. 2005) ("plaintiffs here were thus required to prove that at the time the [products] left 3M's control, there was a feasible alternative design available that would have prevented the harm without impairing the usefulness of the product"); *Hobson v. Waggoner Engineering, Inc.*, 878 So.2d 68, 79-80 (Miss. 2003).

In this case, the question of whether the subject 1995 4Runner was defectively designed must therefore be judged against the technological context existing at the time of manufacture. The evidence is undisputed that Plaintiffs' 4Runner was manufactured in October of 1995 and subsequently sold. It met all applicable Federal Motor Vehicle Safety Standards. Evidence of what NHTSA may require for future model year vehicles has no relevance whatsoever to this 1995 model year vehicle, and such evidence shall be excluded for lack of probative value. The court shall exclude any testimony regarding the new FMVSS 216. This new standard—enacted fourteen years after the subject vehicle was manufactured and which does not apply to any vehicles currently on the road today—will not assist the jury in determining whether or not the subject vehicle was defective when it left the hands of Toyota.

This ruling in no way prohibits Plaintiffs from arguing that the 1995 standards

were inadequate. Plaintiffs' experts have offered opinions as to why they believe the standard was inadequate independent of the existence of the new FMVSS 216. For example, according to Plaintiffs' own expert, Martha Bidez in her January 2011 report, "[t]he existing FMVSS 209 and FMVSS 216 are merely structural component tests. Compliance with FMVSS 209 and/or FMVSS 216 does not provide any reasonable measure of occupant safety in a rollover crash." They simply may not rely on the 2009 changes to the regulations to support their alleged inadequacy in 1995.

### **TOYOTA'S DOCUMENTS, EMAILS, ETC. OBJECTING TO FMVSS CHANGES**

Toyota has produced numerous documents– including comments, reports, studies, as well as hundreds of emails– reflecting its analysis, discussion and comment regarding the NPRM. These documents were produced to Plaintiffs in conjunction with Toyota's Initial Disclosure. Toyota has stated that it anticipates that Plaintiffs will attempt to introduce certain portions of emails and documents to improperly suggest Toyota opposed safety regulations or attempted to unduly influence NHTSA's promulgation of changes to FMVSS 216.

Discovery of Toyota's internal and external communications with the government and others pertaining to the amendment of FMVSS 216 was allowable for purposes of discovery. It is well recognized that "the standard of relevance in the context of discovery is broader than in the context of admissibility." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). For admission at trial, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." Fed. R. Evid. 401.  Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The information and communications Toyota seeks to exclude here are irrelevant– and therefore inadmissible– because they have no tendency to make more probable Plaintiffs' allegations that the subject 1995 4Runner was defective.

The issues presented by Plaintiffs' claims in this case are whether Toyota was negligent or strictly liable in its design of the roof structure of the 1995 4Runner. Evidence of Toyota's beliefs, comments or recommendations regarding the adoption of a new roof intrusion test standard—occurring ten years or more after the date this vehicle left its control—are irrelevant and inadmissible.  Moreover, their admission would have a chilling effect on both Toyota's constitutionally protected rights and the effective performance of NHTSA's legislative and rulemaking responsibilities.  For these reasons, the court will exclude any evidence or argument– including testimony, emails or other documents– that Toyota or other manufacturers communicated with or attempted to influence any governmental agencies, and specifically NHTSA, with respect to those rulemaking or legislative functions.

## IIHS "STAR RATINGS"

Toyota also has asserted that Plaintiffs may attempt to refer to other safety ratings established after 1995, such as the Insurance Institute for Highway Safety (IIHS) rating system for roofs that came out in 2009 ("Star Ratings").  The ratings system is based upon the strength to weight ratio of the roof and is as follows:

• A rating of "Good" equates to a strength to weight ratio (SWR) of at least 4.0.

• A rating of "Acceptable" equates to a SWR between 3.25 and 4.0.

- A rating of "Marginal" equates to a SWR between 2.5 and 3.25.
- A rating of "Poor" equates to a SWR below 2.5.

The IIHS star ratings were issued in 2009, fourteen years after the subject vehicle was manufactured. These ratings would therefore not apply to the subject 1995 4Runner, and any attempt to use these 2009 ratings to suggest or imply that the vehicle was defective in 1995 is improper. Again, the issue in this case is whether the subject vehicle was defective when it left the hands of Toyota, and if it was defective, whether those defects caused W.A.G.'s injuries. This star ratings system (or any others like it) does not answer those questions. It does not help the jury in determining whether the vehicle was defective—the ratings do not establish whether the 4Runner roof (or any roof) is defective, they merely establish what IIHS believed to be "Good," "Acceptable," "Marginal," and "Poor" in 2009. Just as with the new FMVSS 216 standard, Toyota cannot be held to this ratings system (or any ratings system) that was not in place at the time the subject vehicle was manufactured. Furthermore, the existence of this ratings system does not establish a causal connection between W.A.G.'s injuries and the design of the roof.

## CONCLUSION

For the above-stated reasons, the court precludes the introduction of any references to new FMVSS 216 standard, other safety ratings, and other evidence and testimony pertaining to the internal or external communications between Toyota, NHTSA, or other automakers regarding changes in federal legislation or regulations to FMVSS 216 which took place over ten years after the subject vehicle was manufactured

and sold.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' First Motion *In Limine* to Exclude Evidence Or Testimony Pertaining to Changes to Federal Safety Regulations and Ratings After 1995 **[#172]** is granted and the court prohibits any references to any new FMVSS 216 standard, other safety ratings, and other evidence and testimony pertaining to the internal or external communications between Toyota, NHTSA, or other automakers regarding changes in federal legislation or regulations to FMVSS 216 which took place after the subject vehicle was manufactured and sold.

SO ORDERED AND ADJUDGED this the 5th day of January, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE