IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


WAYNE AND MARY GRAVES, FOR AND ON
BEHALF OF W.A.G., A MINOR                                         PLAINTIFFS

VERSUS                                        CIVIL ACTION NO. 2:09cv169KS-MTP

TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, USA, INC.                                   DEFENDANTS


MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Fourth Motion *In Limine* to

Exclude Evidence Regarding References to Volvo, the Volvo XC90, and Information

from Other Manufacturers **[#178]**.  The court having reviewed the motion, the response,

the briefs of counsel, the authorities cited, the pleadings and exhibits filed, and being

otherwise fully advised in the premises finds that the motion should be denied.  The

court specifically finds as follows:


BACKGROUND

This is a product liability action encompassing the commonly referred to rollover

and roof crush claims.  The accident occurred on December 31, 2008 on U.S. Highway

84 in Jones County, Mississippi.  This single vehicle crash involved sixteen year-old

W.A.G., who was operating a 1995 Toyota 4Runner.  As W.A.G. approached the

intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness

testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began

to yaw and then roll over multiple times.  Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. ("Toyota"), have moved this court *in limine* for an order barring Plaintiffs, their counsel, and their witnesses and experts from making any references to Volvo, the Volvo XC90, and information from other manufacturers, from *voir dire* to verdict.  Toyota asserts that it anticipates that Plaintiffs their counsel, their witnesses, and specifically, their experts Stephen Forrest and Martha Bidez will make references at trial to Volvo and the XC90 SUV designed and manufactured by Volvo, which was first introduced to the market for the 2003 model year and that they will make references at trial to documents and information regarding other manufacturers.

Toyota contends that such evidence is not probative of any issue in this case. Under Miss. Code Ann. § 11-1-63, Plaintiffs must prove, by the preponderance of the evidence, that the 1995 Toyota 4Runner at issue in this case was "designed in a defective manner" at the time it "left the control of [Toyota]."  Furthermore, Plaintiffs must show that not only did the 1995 Toyota 4Runner fail to function as expected, but also that "there existed a feasible design alternative that would have to a reasonable probability prevented the harm."  Miss. Code Ann. § 11-1-63 (f)(ii).  Therefore, Toyota argues that any information regarding vehicle design, development or testing after 1995 by other manufacturers (such as Volvo with the XC90) is not probative of the issue of whether or not the 1995 4Runner was defectively designed.  In the alternative, Toyota seeks exclusion of this evidence under Fed. R. Evid. 403, arguing that its probative

value is outweighed by the unfair prejudice to Toyota in asking the jury to compare a 1995 model year vehicle to a 2003 model year vehicle for purposes of evaluating defect and feasible alternative designs.

Plaintiffs respond that the information relating to Volvo, including the Volvo XC90 vehicle is relevant to this product liability action in several respects.  Specifically, they argue the Volvo information is most relevant to the  issues of alternative feasible design and injury causation as required under the MPLA.

Plaintiffs' expert witness, Stephen Forrest, will rely on and testify about the Volvo information, including the Volvo roof structure and specifically the Volvo XC90 vehicle. According to Forrest, an alternative feasible design of the roof structure of the 1995 Toyota 4Runner includes additional tubular steel reinforcements in the roof pillars as well as the use of structural foam.  The design principles espoused by Stephen Forrest as an alternative feasible design were apparently implemented by Volvo in its vehicles and specifically, the roof structure of the Volvo XC90 vehicle.   Further, according to Forrest "while the XC90 was first produced in 2003, its roof design, construction, methodology and materials were available for use well before the design in production of the 1995 Toyota 4Runner."  Based on Forrest's opinion, evidence relating to the Volvo roof design of the XC90 vehicle is relevant and admissible on the issue of alternative feasible design.  Forrest's opinions touch on issues of credibility, not admissibility and the court is certain that Forest's opinions will be subjected to vigorous and extensive cross-examination.

Also, Toyota seeks to exclude Figure 1 referenced in the report of Martha Bidez, which is one slide from a PowerPoint presentation concerning the Volvo XC90 and roof

structure testing.  Plaintiffs argue that the testing of the Volvo XC90 and specifically this one slide from a PowerPoint presentation are relevant on the issue of injury causation. They contend the PowerPoint slide evidences that Volvo, when testing its roof structures including the XC90 vehicle, attempts to avoid head impact of belted occupants in rollover accidents.  This is consistent with the opinions that will be espoused by Dr. Martha Bidez at trial.  This diagram assists Dr. Bidez in explaining her opinions to the jury, which, as with Stephen Forrest, the court is certain will be subjected to vigorous and extensive cross-examination.  Once again, this is an issue of credibility, not admissibility.

Toyota also seeks exclusion of references to information from other automobile manufacturers.  Plaintiffs are correct that this request is overly broad and quite contradictory since Toyota has indicated that it will offer information concerning other manufacturers and performance of their sport utility vehicles in rollover situations. Toyota makes specific reference to the content of Forrest's report and the BMW Z3, Mercedes 500SL and Mercedes E class.  In making such references on page 41 of his report, Forrest indicates that the design alternative he suggests and its associated design, construction methodology and materials were available and being used by other automobile manufacturers.  For instance, according to Forrest, the 1993 Ford Falcon employed rigid composite fillers in its roof structures to increase roof strength performance.  Also, General Motors, Infinity, Nissan and Mitsubishi used these same rigid composite fillers.  The tubular steel frame technology was utilized in the General Motors Fiero and Lumina as well as the Audi A8 vehicle.  This technology and design is relevant and admissible on the issue of alternative feasible design as well as the

statutory requirement that the design alternative not substantially compromise the product's usefulness or desirability.  This evidence is admissible to show that these designs do not impair the usefulness, practicality or desirability of those vehicles discussed and therefore would not adversely impact the 1995 Toyota 4Runner. Toyota's sweeping request, to the extent it seeks exclusion of the information contained on pages 41-42 of Stephen Forrest's report, shall be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Fourth Motion *In Limine* to Exclude Evidence Regarding References to Volvo, the Volvo XC90, and Information from Other Manufacturers **[#178]** is denied.

SO ORDERED AND ADJUDGED this the 6th day of January, 2012.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE