IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**WAYNE AND MARY GRAVES, FOR AND ON
BEHALF OF W.A.G., A MINOR**                                                **PLAINTIFFS**

**VERSUS**                                              **CIVIL ACTION NO. 2:09cv169KS-MTP**

**TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, USA, INC.**                                              **DEFENDANTS**

## ORDER

This matter is before the court on Plaintiffs' First Motion *In Limine* regarding Statements in Medical Records Regarding the Cause of the Subject Accident **[#188]**. The court having reviewed the motion, the response, the briefs of counsel, the authorities cited, the pleadings and exhibits filed, and being otherwise fully advised in the premises finds that the motion should be granted. The court specifically finds as follows:

## BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims. The accident occurred on December 31, 2008 on U.S. Highway 84 in Jones County, Mississippi. This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4Runner. As W.A.G. approached the intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began

to yaw and then roll over multiple times. Although W.A.G. was wearing his seat belt and remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

The Plaintiffs have moved this court for an order *in limine* excluding any and all evidence, testimony, exhibits, questions, references, and arguments offered by the Defendants or their counsel in the presence of the jury, whether in *voir dire*, opening statement during the presentation of evidence, questioning or closing argument, concerning statements regarding the cause of the subject motor vehicle accident, or events leading up to the subject motor vehicle accident contained in W.A.G.'s medical records. To better understand the issues presented, a brief synopsis of the events occurring after the accident is in order.

Immediately after the subject accident, emergency personnel responded to the scene within minutes after the accident. According to the EMServ Ambulance Service records, the rescue personnel began extricating W.A.G. from the vehicle at 8:34 a.m., and completed the extrication at 8:41 a.m. At that time, the ambulance personnel noted that W.A.G. had a Glasgow Coma Scale of 8, which indicates that W.A.G. sustained a traumatic brain injury as a result of the accident.

W.A.G. was transported by ambulance to South Central Regional Medical Center ("SCRMC") in Laurel, Mississippi and presented to the emergency department at 9:03 a.m. The SCRMC emergency department records state that W.A.G. had been a restrained driver in a roll-over motor vehicle accident; however, "[f]urther history was not able to be obtained because of the patient's mental status. Upon arrival, W.A.G. was noted to be confused and combative, with a decreased level of consciousness. W.A.G.

was intubated by the emergency department staff at 9:30 a.m.  Thereafter, the emergency room physicians decided to transfer W.A.G. to University Medical Center in Jackson for neurological care.  W.A.G. was transported to University Medical Center via helicopter.  The air ambulance records reflect that W.A.G. was unresponsive with a Glasgow Coma Scale of 3 due to sedation and chemical paralysis during transport.

    W.A.G. presented to the emergency department at University Medical Center at 11:03 a.m.  The Emergency Department Resident Note of 11:21 a.m. states that W.A.G. had been involved in a single vehicle motor vehicle accident.  The history was obtained from the "paramedic."  Subsequently, W.A.G. was admitted to the Neurosurgical Intensive Care Unit at University Medical Center, where it was determined that he had been rendered a quadriplegic as a result of the subject accident.  The Intensive Care Unit Progress Notes from January 1, 2009 through January 3, 2009 reflect that W.A.G. had been a restrained driver in a one-vehicle rollover accident; however, no further description of the accident is provided.  W.A.G. was placed on a ventilator and was unresponsive to commands with "very limited neurological value due to sedation."

    On January 4, 2009, W.A.G. was "fully awake and alert, off sedation …. Better assessment will be possible once he is extubated and fully able to cooperate."  Exhibit "G" – University Medical Center Neurocritical Care Unit Progress Note dated January 4, 2009.  W.A.G. was extubated on January 4, 2009, but subsequently experienced respiratory failure and was reintubated on the morning of January 5, 2009.  Thereafter, W.A.G. was noted to be sedated and did not try to speak over the tube.  From January 7, 2009 to January 12, 2009, W.A.G. was noted to be alert and oriented; however, no additional description of the accident is provided in the University medical records.

On January 12, 2009, W.A.G. was transferred from University Medical Center to Mississippi Methodist Hospital and Rehabilitation Center for comprehensive spinal cord rehabilitation.  The January 12, 2009 Patient History and Physical Examination compiled and dictated by Shannon Moffett, ACNP, and signed by Dr. Samuel Grissom, states, in part, as follows:

> [W.A.G.] is a 16-year-old, right-handed; Caucasian male with no significant past medical history. At approximately 8:15 on 12/31/2008 the patient was on his way to work out for football-practice. The patient received a telephone call and was reaching down into his pocket to answer his phone when his car tire fell off the side of the road. He tried to correct. When he corrected, he overcorrected, and the patient flipped 3 times. It was a single car motor vehicle collision. The patient was restrained. There was no loss of consciousness; however, when the Highway patrol arrived on the scene the patient was very confused. EMS was called and the patient's Glasgow Coma Scale on their assessment of the patient on their arrival at the scene was 9.

The evidence shows that it is unclear where Nurse Moffett obtained this history. W.A.G. has repeatedly stated that he does not recall how the accident occurred. Wayne and Mary Graves also testified that they have no idea where Nurse Moffett obtained the information contained in the history and physical.  Likewise, Shannon Moffett, the nurse practitioner who prepared the History and Physical Examination Report, and Dr. Grissom testified that they do not recall who gave Moffett the information contained in the history and physical regarding the accident.  However, Nurse Moffett has explained that in order to compile a patient history, she would talk to the patient, the family, outside people, and medical records from others.  When asked what she remembers about taking W.A.G.'s patient history, Nurse Moffett "remember[ed] being in the room, talking to the family and [W.A.G.]."  She remembered that she "talked to [W.A.G.'s] mother especially."

Finally, on March 9, 2009, W.A.G. was evaluated by Dr. James Irby, a neuropsychologist at Methodist Rehabilitation Center. Dr. Irby's evaluation note of March 9, 2009 states, in part, that "[a]ccording to [W.A.G.'s] medical records one of the tires of his car fell off the road, and when he corrected, the vehicle flipped approximately 3 times." Dr. Irby testified that he did not get the information about the accident from W.A.G, but from the medical records. He also testified that W.A.G. told him he had no memory of the accident.

In light of the foregoing, Plaintiffs contend that the description of pre-accident events contained in W.A.G.'s medical records is inadmissible hearsay that fails to meet the hearsay exception under Fed. R. Evid. 803(4) in regard to statements made for purposes of medical diagnosis. Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota"), however, assert that these statements are not hearsay at all, but instead are party admissions under Fed. R. Evid. 801(d)(2), which provides:

> **(d) Statements That Are Not Hearsay**. A statement that meets the following conditions is not hearsay:
>
> ***
>
> **(2) An Opposing Party's Statement.** The statement is offered against an opposing party and:
>
> > **(A)** was made by the party in an individual or representative capacity;
> >
> > **(B)** is one the party manifested that it adopted or believed to be true;
> >
> > **(C)** was made by a person whom the party authorized to make a statement on the subject;

> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Toyota asserts these statements will be offered against W.A.G. and Plaintiffs, for impeachment, in support of Toyota's defense that the handling and stability characteristics of the subject vehicle were reasonably safe and not defective, and to show W.A.G.'s negligence in causing or contributing to this crash. Toyota contends these statements were either made by W.A.G. or Plaintiffs speaking on W.A.G.'s behalf, and squarely fit within the exception.

To support admission of the information, Toyota would have this court conclude that there can be no other explanation than Plaintiffs or W.A.G. provided the information for use in the medical records. However, the undisputed testimony in this case is that W.A.G. does not remember anything regarding what transpired after he stopped at a stop sign several minutes before the accident, until approximately four days after the accident, when he woke up in the hospital. Nor does Shannon Moffett, who put the information in the medical history, recall who gave it to her.

There has been no showing by Toyota, at this point, that the information Plaintiffs seek to exclude contained in W.A.G.'s medical records is anything other than speculation, conjecture or innuendo. It may be a logical assumption by Toyota that the information came from W.A.G. because it supports their theory of how this accident happened. However, without more direct evidence of where this information came from, the court will not assume that it was provided by W.A.G. or his parents. It should, therefore, be excluded. If additional information about its origin is forthcoming, the court

will revisit this issue.

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiffs' First Motion *In Limine* regarding Statements in Medical Records Regarding the Cause of the Subject Accident **[#188]** is granted and the court prohibits any evidence, testimony, exhibits, questions, references, and arguments offered by the Defendants or their counsel in the presence of the jury, whether in *voir dire*, opening statement during the presentation of evidence, questioning or closing argument, concerning statements regarding the cause of the subject motor vehicle accident, or events leading up to the subject motor vehicle accident contained in W.A.G.'s medical records.

SO ORDERED AND ADJUDGED this the 10th day of January, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE