# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

WAYNE AND MARY GRAVES, FOR AND ON
BEHALF OF W.A.G., A MINOR                                    PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 2:09cv169KS-MTP

TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, USA, INC.                              DEFENDANTS

## ORDER

This matter is before the court on Plaintiffs' Second Motion *In Limine* regarding CellularSouth Phone Records **[#190]**. The court having reviewed the motion, the response, the briefs of counsel, the authorities cited, the pleadings and exhibits filed, and being otherwise fully advised in the premises finds that the motion should be denied. The court specifically finds as follows:

## BACKGROUND

This is a product liability action encompassing the commonly referred to rollover and roof crush claims. The accident occurred on December 31, 2008 on U.S. Highway 84 in Jones County, Mississippi. This single vehicle crash involved sixteen year-old W.A.G., who was operating a 1995 Toyota 4Runner. As W.A.G. approached the intersection of Highway 84 and Rose Lane, the physical evidence and eyewitness testimony establish that W.A.G. steered his vehicle to the left and that the vehicle began to yaw and then roll over multiple times. Although W.A.G. was wearing his seat belt and

remained inside the vehicle during the rollover, as a result of the rollover and roof crush, W.A.G. was rendered quadriplegic.

The Plaintiffs have moved this court for an order *in limine* excluding any and all evidence, testimony, exhibits, questions, references, and arguments offered by the Defendants or their counsel in the presence of the jury, whether in *voir dire*, opening statement during the presentation of evidence, questioning or closing argument, concerning W.A.G.'s CellularSouth phone records.

W.A.G's CellularSouth phone records, on the morning of December 31, 2008 prior to the accident, confirm that W.A.G. did not place or receive a cellular telephone call prior to the subject accident but that he sent two text messages, one at 8:06.28 a.m. and the other at 08:14:35 a.m. There was no other cellular phone activity evidenced by the records.

As established by the Jones County Sheriff's Department Incident Report, the 911 call was received at 8:20 a.m. Jesse Gass, an eyewitness to the accident who was traveling behind W.A.G.'s vehicle, confirmed that he placed the 911 call from his moving vehicle immediately upon observing the W.A.G. vehicle in a rollover mode.

. Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota"), argue they must be permitted the opportunity to cross examine W.A.G. about his testimony he sent the two text messages at issue prior to turning onto Highway 84 before the subject crash and his claim that he has no memory of the events leading to the crash after he turned onto Highway 84 after stopping at a stop sign and sending a text message. Toyota asserts that the CellularSouth records do not appear to line up with W.A.G.'s testimony as neatly as Plaintiffs would like to suggest and given

the alleged discrepancies between these records and W.A.G.'s testimony, as well as

the discrepancies found in the evidence and relevant testimony post-crash, and the

undisputed fact that W.A.G. was using his cell phone while operating the subject vehicle

the morning of the crash, the CellularSouth records are probative in the determination of

whether or not W.A.G.'s own actions caused or contributed to this crash, and therefore,

must be admitted under F.R.E. 401, 402, and 403.

W.A.G. has testified that he recalls leaving his house around 8:05 or 8:07 that

morning, and before he "cranked" the 4Runner, while sitting in the vehicle at home, he

received a text message from his friend Mark. He does not recall whether he

responded to that message. He then drove from his house to Highway 84, where he

stopped at a stop sign and tried to send a text to his friend Jacob (and apparently sent

the message to another "Jacob" by mistake) before turning onto Highway 84. From that

point on, W.A.G has testified that he has no memories of the events leading to the

subject accident. According to Toyota, lining this testimony up with W.A.G.'s phone

records, W.A.G. would have sent Mark a text message at 8:06:28, while sitting in his

driveway at home, started the 4Runner, drove to the stop sign and sent a second text

message eight minutes later, at 8:14:35 a.m., then turned on to Highway 84, and the

crash occurred minutes later.

What Toyota finds curious about this time-line is that Plaintiff Mary Graves

testified that it takes about a minute to get from their house to the stop sign where one

would turn onto Highway 84. Thus, according to Toyota, that being the case, and even

taking into account additional time for WA.G. to start his vehicle and adjust any controls

on the vehicle and buckle his seatbelt, there is no explanation for such a long gap of

time (eight minutes) between text messages which should have been only a minute or two apart.  There is no evidence of W.A.G. making a phone call, and he did not mention anything else that occurred between the time he saw the text message from Mark (and presumably responded to the message) to the point at which he reached the stop sign to turn onto Highway 84.  The second text message was not a long message which read: "You coming to Cooley's tonight" with a time stamp of 8:14:44 a.m.

Toyota finds the time-line offered by W.A.G. even more curious in light of the fact that Mary Graves noted it took about eight minutes to get from the stop sign at the intersection of Hebron Centerville Road (the road from W.A.G.'s house to Highway 84) to the site of the crash.  Thus, Toyota concludes this eight minute gap lines up more closely with the first text being sent at 8:06:28 a.m. while W.A.G. was stopped at the stop sign, and the second text being sent at 8:14:35 a.m. while W.A.G. was on Highway 84, immediately before the crash.

Plaintiffs have focused on the gap of time between the CellularSouth record of 8:14:35 and the time the accident was reported per the AT&T reported time in the Jones County Emergency Management records at 8:20:00 a.m.  Toyota argues this five minute, 25 second gap would cover: (1) any discrepancies between CellularSouth and AT&T time logs, which may differ, as they are different phone service providers; (2) the time W.A.G. was distracted from the road while sending a text until he swerved; (3) the time it took for the rollover sequence to occur; and (4) the time it took Jesse Gass to make the call to 911.

Toyota also suggests that setting aside the timing issues for a moment, the cell phone records are also significant insofar as they are the only evidence which may

-4-

explain why this crash occurred. Toyota argues the Plaintiffs have consistently ignored this critical question as evidenced by Mickey Gilbert, the Plaintiffs' reconstructionist, who does not evaluate the crash upstream of a right steer input by W.A.G., and offers no explanation for why W.A.G. would have input these steering maneuvers. Toyota also adds that it is undisputed that W.A.G. was texting while in the 4Runner that morning, and based on past cell phone records and school attendance records, W.A.G. had a history of frequently texting in the mornings when he would have been on his way to school. Add to that the fact that W.A.G.'s cell phone was found outside of the 4Runner in the intersection near the location where the 4Runner came to rest, and Toyota seems to suggest there is proof positive that W.A.G. was occupied with his cell phone at the time of the accident.

This court has already cautioned that W.A.G.'s cell phone records could lead to irrelevant inferences about what he was doing with his phone at the time of the accident. In the Order excluding certain testimony by Nathan Dorris, the court concluded "there is nothing reliable about time extrapolated opinions [since W.A.G. sent a text message at 8:14:35 a.m. he must have been focused on or interacting with his cell phone 5 or 6 minutes later] and supported only by speculative theories that W.A.G was either (1) searching for his cell phone, (2) looking at his cell phone or (3) trying to verify that his cell phone was still in the same place he left it …. Indeed, the entire foundation that driver inattention contributed to this accident is built on sand." *Memorandum Opinion and Order granting Motion to Exclude Testimony of Nathan Dorris* at p. 12. The court is still convinced that Mr. Dorris' opinions were too speculative to assist the jury. The jury will be perfectly capable of making reasonable

inferences regarding cell phone usage by W.A.G. based on the phone records and witness testimony regarding the time-line when W.A.G. left home, responded to the text messages and the occurrence of the accident.

One critical question in this case is whether the Toyota 4Runner was defectively designed such that it rolled over, the roof deformed and caused or contributed to W.A.G.'s injuries. There will be ample expert discussion on both sides of this issue. Another critical issue is the level of negligence attributable to W.A.G. There is no explanation why W.A.G. suddenly swerved to his left and contributed to the 4Runner's rollover sequence. The jury will have ample room to conclude that driver error contributed to the initiation of the crash. The cell phone records will likely contribute to a complete understanding of the events of that unfortunate day, and, while prejudicial to the Plaintiffs, are not unduly so such that they should be excluded.

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiffs' Second Motion *In Limine* regarding CellularSouth Phone Records **[#190]** is denied.

SO ORDERED AND ADJUDGED this the 11th day of January, 2012.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE