**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**WAYNE AND MARY GRAVES, FOR AND ON**
**BEHALF OF W.A.G., A MINOR**                                          **PLAINTIFFS**

**VERSUS**                                          **CIVIL ACTION NO. 2:09cv169KS-MTP**

**TOYOTA MOTOR CORPORATION AND**
**TOYOTA MOTOR SALES, USA, INC.**                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Judgment as a Matter of Law, or,

Alternatively, for New Trial, or, Alternatively, to Alter or Amend the Judgment **[#277]**

filed on behalf of the Defendants, Toyota Motor Corporation and Toyota Motor Sales,

USA, Inc. ("Toyota").  The court, having reviewed the motion, the response, the briefs of

counsel, the pleadings and exhibits on file and having conducted a three week trial in

this matter, finds that the motion is not well taken and should be denied.  The court

specifically finds as follows:

The court has exhaustively stated the primary facts of this case in numerous

pretrial rulings and the record of the trial will speak for itself.  However, the main factual

basis for this action, stated briefly, is that this is a product liability action encompassing

the commonly referred to rollover and roof crush claims.  On August 26, 2009, the

Plaintiffs, Wayne and Mary Graves, for and on  Behalf of W.A.G., a Minor, ("Graves")

filed their Complaint against the Defendants, alleging, in part, that Toyota negligently

failed to design and/or manufacture the 1995 Toyota 4Runner which W.A.G. was

driving, specifically, the roof system and its supports, to eliminate an unreasonable risk

of injury to the vehicle's occupants from roof crush injury during a rollover.  The Graves also alleged that the 4Runner lacked sufficient handling and stability characteristics that might have prevented the rollover.  As a result of claimed roof crush during the rollover sequence, the Graves alleged that W.A.G. "sustained permanent and debilitating spinal cord injuries which have rendered him permanently paralyzed from the sternum to the lower extremities."

At trial, the Graves sought actual damages for: (a) medical, therapeutical and related expenses, past, present and future; (b) permanent loss of wage earning capacity; (c) physical pain and emotional suffering, past, present and future; (d) permanent disability and the resulting anguish, hardship and expense of W.A.G.'s paralysis and confinement to a wheelchair; (e) life care expenses; and, (f) other damages as permitted by law.  The Graves also claimed entitlement to punitive damages.

After proceeding through discovery, trial commenced in this case on February 6, 2012.  A verdict was returned in favor of the Graves on February 24, 2012, after three weeks of trial.  A final judgment on the jury verdict was entered by the Court on March 2, 2012, in the amount of $6,850,707.05 plus costs and interest.  Toyota has filed the present motion seeking the relief set forth therein and discussed in detail below.

## JUDGMENT AS A MATTER OF LAW, RULE 50(B)

Toyota first renews its motion made at trial for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), which provides as follows:

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law

made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment– or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

"A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford v. Cimarron Ins. Co.*, 230 F. 3d 828, 830 (5th Cir. 2000). Judgment as a matter of law under Fed. R. Civ. P. 50(b) is proper "after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Ford*, at 830 (*quoting Foreman v. Babcock & Wilcox Co.*,117 F. 3d 800, 804 (5th Cir. 1997)). A court should grant a motion under Rule 50 if, when considering all of the evidence in a light most favorable to the non-moving party, the facts and inferences point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Evans v. Ford Motor Co.*, 484 F. 3d 329, 334 (5th Cir. 2007)*; Omnitech International, Inc. v. Clorox Co.*, 11 F. 3d 1316, 1323 (5th Cir. 1994).

Stated another way, a motion for judgment as a matter of law should not be granted unless "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a). This will only occur if "the facts and

inferences point so strongly and overwhelmingly in the movant's favor" that jurors could not reasonably have reached a contrary verdict. *Brennan's, Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004). In considering a motion for judgment as a matter of law, this Court must credit the non-moving party's evidence and "disregard all evidence favorable to [Toyota] that the jury is not required to believe." *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (quotation marks and citation omitted). After a jury trial, the Fifth Circuit's standard of review is "especially deferential." *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 456 (5th Cir. 2000).

### A. Specific Claims for Judgment as a Matter of Law

#### 1. Handling and Stability

Toyota first contends that the Plaintiffs did not offer legally sufficient proof of any of the elements of their handling and stability and roof defect claims as required under the Mississippi Products Liability Act. To establish a claim under the Mississippi Products Liability Act, Miss. Code Ann. § 11-1-63 ("MPLA"), the Plaintiffs were required to prove that the 1995 Toyota 4Runner was defective, that the defective condition rendered the 4Runner unreasonably dangerous, and that the defective and unreasonably dangerous condition of the 4Runner proximately caused Plaintiffs' damages. With respect to a design defect claim, the MPLA further requires proof that, at the time the subject product left the Defendants' control:

> (i) the manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known about the danger that caused the damage for which recovery is sought; and

> (ii) the product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility,

-4-

usefulness, practicality or desirability of the product to users or consumers. Miss. Code Ann. §11-1-63(f) (Supp. 2011).

In this case, Toyota asserts that the Plaintiffs did not present legally sufficient evidence on any of the elements of the design defect claims related to the handling and stability characteristics of the 4Runner or the roof. Specifically, Toyota argues that the Plaintiffs incorrectly attempted to establish that the subject vehicle was defective based on its "static stability factor," a calculation based upon the center of gravity height and track width of the vehicle, and claimed that this number should have been higher. Toyota further contends that the subject vehicle was driven by five individuals for a period of 13 years in excess of 190,000 miles without incident, also supporting a finding of no defect. Finally, Toyota argues that the 1995 4Runner met Toyota's 0.7g standard for rollover resistance.

At trial, there was substantial testimony about the static stability factor from the Plaintiffs' expert, David Bilek as well as from Toyota's 30(b)(6) designee, Takashi Yonekawa. Yonekawa, testified that the track width-center of gravity ratio is a factor in the rollover resistance assessment. Bilek testified to the same effect and further that in order to evaluate a vehicle's rollover resistance, the vehicle must be subjected to "limit testing." When the vehicle is exposed to its "limits," it will respond in one of three ways due to tire friction forces alone: (1) rollover; (2) "slide out"; or, (3) "plow out." In this case, the subject vehicle rolled over.

There was also substantial testimony about Toyota's unwritten rollover standard of 0.7g, which was not officially adopted by Toyota until 1996. The evidence developed during the Plaintiffs' case in chief and the cross examination of Toyota's expert, Lee Carr, presented a classic jury issue as to the validity and underlying purpose of the 0.7g

standard.

With regard to Toyota's second argument on handling and stability, while the subject vehicle had in excess of 190,000 miles at the time of the accident and was over 13 years old, none of the previous owners and operators recalled experiencing a situation that necessitated an emergency steering maneuver of the same or similar nature that W.A.G. experienced in this case. However, both David Bilek and Micky Gilbert testified that the steering maneuver W.A.G. performed in this accident was a "foreseeable" steering maneuver and that the 1995 4Runner should have been designed to withstand such a maneuver.

Plaintiffs effectively demonstrated a jury issue that the handling and stability characteristics of the 1995 4Runner rendered the vehicle defective and unreasonably dangerous. Based on the foregoing, the jury had a legally sufficient evidentiary basis to find for the Plaintiffs on this issue. Therefore, Toyota's motion for judgment as a matter of law should be denied as to this issue.

## 2. Roof Defect

Toyota next argues that the Plaintiffs also failed to prove that the roof of the 1995 4Runner was defective and unreasonably dangerous. Toyota contends that the subject vehicle complied with all applicable standards for roof strength, specifically, Federal Motor Vehicle Safety Standard 216 ("FMVSS 216"). Toyota further argues that because the rollover event was in the "highest category of severity," the fact that there was roof/pillar deformation merely shows the severity of the crash, not the weakness of the roof.

All of the parties agree that FMVSS 216 is a minimum requirement and that compliance with FMVSS 216 does not provide "immunity" to a designer or manufacturer

such as Toyota. At trial, Plaintiffs' experts, Stephen Forrest and Dr. Martha Bidez, both opined that FMVSS 216 was an inadequate test limited to one side of the vehicle and is not intended to assess occupant injury exposure. As established by the testimony of Mr. Forrest and Dr. Bidez, FMVSS 216 is a "static" compactor test that does not replicate rollover roof crush. Moreover, Toyota did not dispute that it could have designed and constructed a stronger, more crush resistant roof for the subject vehicle.

Further, Plaintiffs offered evidence that Toyota did not test the 1995 4Runner in accord with FMVSS 216 before manufacturing, distributing and selling the vehicle to the public, contrary to the sticker placed on vehicle indicating that on the date of manufacture (October 1995) the Graves vehicle complied with applicable FMVSS's. According to testimony before the jury, they (the jury) could have concluded that Toyota did not know if its roof complied with FMVSS 216 prior to production.

Stephen Forrest testified about the areas and natures of the failures in the roof of the subject vehicle. Mr. Forrest explained in great detail with the aid of photographs and an exemplar roof that failures occurred in the driver's side A-pillar, the driver's side B- pillar – where pillar and post join, and the corner junction of the front transverse header. Mr. Forrest further testified that the roof structure was defectively designed such that it lacked sufficient resistance to the roof intruding into the occupant's survival space during a rollover event. Therefore, Plaintiffs offered sufficient proof for the jury to consider that the roof of the 1995 4Runner was defective and unreasonably dangerous, thus, the jury had a legally sufficient evidentiary basis to find for the Plaintiffs on this issue. Therefore, Toyota's motion for judgment as a matter of law should be denied as to this issue.

### 3. Alternative Design

As set forth above, to establish a design defect claim under the MPLA, Plaintiffs must also offer proof that "there existed a feasible design alternative that would have to a reasonable probability prevented the harm … without impairing the utility, usefulness, practicality, or desirability of the product to users or consumers." *See* Miss. Code Ann. § 11-1-63(f)(ii) (Supp. 2011). Proof of a specific alternative design, not merely a conceptual one, is a threshold requirement under this element. *See, Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006) (noting that "mere mention of a design alternative by an expert comes well short of lending evidentiary guidance to a court"); *Guy v. Crown Equipment Corp.*, 394 F. 3d 320, 327 (5th Cir. 2004) (explaining, "the proper methodology for proposing alternative designs includes more than just conceptualizing possibilities"); *Watkins v. Telesmith, Inc.*, 121 F. 3d 984, 991 (5th Cir. 1997) ("[a]lternative designs by definition include elements of science, technology, and methodology"). Furthermore, the testimony of an expert regarding a design alternative that is not specific is unreliable, incompetent evidence, and should be disregarded. According to Toyota, each of the Plaintiffs' proposed alternatives failed under the MPLA and controlling case law.

Plaintiffs' design expert, David Bilek presented an alternative design of a 1994 4Runner, same generation as the subject vehicle, with smaller tires and wider track width. Mr. Bilek also provided test results and video of actual test runs showing the 1994 vehicle would not rollover in limit testing at 50 mph. Mr. Bilek opined that this alternative design would not have rolled over in this accident as it was more stable. This opinion was supported by Mr. Bilek's testing of this alternative design, as well as, the higher static stability factor and LAR of the modified 1994 4Runner. Mr. Bilek demonstrated for the jury that both the static stability factor and the LAR with this

alternative design was higher.  Both of these values indicated the vehicle was more stable.

Mr. Bilek also presented the "unidentified" 1996 model 4Runner as an alternative design.  This vehicle had a higher static stability factor than the subject vehicle, indicating more resistance to rollover, as well as a higher LAR.  The track width was wider and center of gravity was lower on the 1996 model 4Runner.  Mr. Bilek also tested this design.  There was further extensive testimony from Mr. Bilek about alternative designs and their feasability.

In *Standard Fire Ins. Co. v. Broan Nutone, LLC,* Civil Action No. 2007-cv-44-KSMTP, 2008 WL 5560882 (S.D. Miss. July 1, 2008), this Court was presented with a similar argument to that which Toyota asserts here.  In *Standard Fire*, this Court held that Broan Nutone's contention that an expert's failure to test his design alternative for a ventilation fan by physically recreating the suspected conditions that sparked a fire, overstated the applicable law on this point.  This Court held that "[w]hile it might be the best practice for an expert to actually test the proposed design alternative, omitting this step does not render the expert's conclusions automatically invalid under the *Daubert* standard." Id. at *6 (citing *Watkins v. Telesmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) (rejecting claim that a plaintiff's expert must always test an alternative product design before testifying.).  *See also, Riley v. Ford Motor Co.,* Civil Action No. 2:09-cv-148- KS-MTP, 2011 WL 2728266 at *6 (S.D. Miss. July 12, 2011) ("Ford makes much of the fact that Meyer did not conduct any tests of the alternative [seat belt buckle] design, but Meyer's failure to test the alternative design is not, by itself, sufficient to bar his testimony.") (citing *Standard Fire*).

The MPLA only requires the Plaintiffs to put forth an alternative design that would

have, more likely than not, prevented the harm at issue. Clearly, Plaintiffs' experts are not required to conduct "real world testing" of the alternative design; however, Plaintiffs' experts did so in this case. Moreover, Toyota tested the 1996 4Runner for handling and stability and Mr. Bilek relied upon this testing as well.

Toyota further contends that the Plaintiffs offered no feasible alternative design as to their roof strength claims. This ignores the extensive testimony of Stephen Forrest on the subject. While Toyota certainly disagreed with Forrest's testimony and presented contradictory evidence on the subject, such does not negate the fact that the jury had a legally sufficient evidentiary basis to find for the Plaintiffs on this issue. Toyota's motion for judgment as a matter of law should be denied as to this issue.

### 4. Proximate Cause

Toyota's last argument on its motion for judgment as a matter of law is that the Plaintiffs did not offer legally sufficient proof that the alleged defective and unreasonably dangerous condition of the 1995 4Runner proximately caused W.A.G.'s injuries. Toyota contends that W.A.G.'s injuries occurred as a result of his head being against the roof at the time that portion of the roof struck the ground, such that the impact with the ground rather than the deformation of the roof/pillars caused W.A.G.'s paralyzing injury.

There was ample testimony on this issue from experts from both parties, the quintessential "battle of the experts." The Plaintiffs convinced the jury with the proof they offered from Dr. Bidez and Stephen Forrest. There was ample credible evidence for the jury to conclude that W.A.G.'s injuries were proximately caused by the allegedly defective Toyota 4Runner. Toyota's motion for judgment as a matter of law should be denied as to this issue.

## MOTION FOR NEW TRIAL

Rule 59(a) authorizes the Court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F. 2d 610, 612-13 (5th Cir. 1985). A new trial may be granted on numerous grounds, including: "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id.* at 613.

On a motion for new trial—unlike a motion for a judgment as a matter of law—the judge may set aside the verdict even though there is substantial evidence to support it. See, Wright & Miller, *Federal Practice and Procedure* § 2806; *U.S. ex rel. Weyerhauser Co. v. Bucon Construction Co.*, 430 F. 2d 420, 423 (5th Cir. 1970) ("A trial judge, on a motion for new trial, may set aside a verdict to grant a new trial, if in his opinion 'the verdict is against the great weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'").

Additionally, there are a number of Fifth Circuit cases which discuss in detail the standard of review on motions for a new trial:

> A trial judge can grant a motion for a new trial if he believes the verdict is contrary to the weight of the evidence. He is free to weigh the evidence in considering this motion.

*Robin v. Wilson Bros. Drilling*, 719 F.2d 96, 98 (5th Cir.1983).

> The trial court in passing on a motion for new trial need not take the view of the evidence most favorable to the verdict winner, but may weigh the evidence. *Bazile v. Bisso Marine Co., Inc.*, 5 Cir. 1979, 606 F.2d 101,

105,; *cert. denied*, 1980, 449 U.S. 829, 101 S.Ct. 94, 66 L.Ed.2d 33; 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil §2806 at 44-45 (1973).

*Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982).

In making this determination [on a motion for new trial], the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party.

*Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir.1985).

When a new trial is requested on such evidentiary grounds [against the weight of the evidence] the motion should not be granted unless the verdict is against the great, not merely the preponderance, of the evidence. *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362-63 (5th Cir. 1980); *Herrmann v. Nicor Marine Co., Inc.*, 664 F.Supp. 241, 245 (E.D. La. 1985).

*Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986, (5th Cir. 1989). The *Jones* court went on to state:

[T]he verdict must be affirmed unless the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]. *Whatley v. Armstrong World Industries, Inc.*, 861 F.2d 837, 839 (5th Cir. 1988), quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969).

*Id.* at 987.

The verdict under attack must be against the "great weight" of the evidence as opposed to merely the "greater weight" of the evidence;

In a further effort to prevent the trial judge from simply substituting his judgment for that of the jury, we require that new trials should not be granted on evidentiary grounds "unless, at a minimum, the verdict is against the great -- not merely the greater -- weight of the evidence". *Conway* 610 F.2d at 363 (citing *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976).

*Shows v. Jamison Bedding, Inc.*, 671 F.2d at 930.

When reviewed under this standard, the trial court has broad discretion to grant or deny a motion for new trial:

The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court, and reversible only for an abuse of that discretion. 6A Moore's Federal Practice ¶ 59.08[5] at 59-156 to 163; 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil §2812 at 118-19 (1973).

*Id.* at 930. However, the grant of a new trial, as opposed to a denial, is subject to a

heightened scrutiny in this circuit:

. . . we apply a broader review to orders granting new trials than to orders denying them. *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 ( 5th Cir. 1980)(per curiam), *reh. denied*, 614 F.2d 1298. And where a new trial is granted on the ground that the verdict is against the weight of the evidence, we exercise particularly close scrutiny, to protect the litigants' right to a jury trial. *Massey*, 508 F.2d at 95.

*Id.* at 930.

## A.  Exclusion of Testimony of Lance Taylor and David Smith

Toyota first argues that the exclusion of the testimony of Trooper Lance Taylor

and Trooper David Smith regarding the finding of tire tracks in the gravel; and the

subsequent striking of the trial testimony of Trooper Lance Taylor was clear legal error

which highly prejudiced defendants, warranting a new trial.

In a ruling on pretrial *in limine* motions this Court excluded opinions of Trooper

Lance Taylor and Trooper David Smith as to what caused disturbed gravel off the edge

of the roadway some distance before the scene of W.A.G.'s accident.  Neither took

pictures of the disturbed gravel and in fact there was testimony that the disturbed gravel

was so far back, that it would have been speculation as to its origins.  Nevertheless,

their accident report included their opinion that the Graves vehicle departed the

roadway and disturbed the gravel before wrecking.  The Court ruled that such opinions

from the Troopers, neither of whom were accident reconstructionists, was too unreliable

and speculative to warrant admission.  Nevertheless, after being admonished by the

-13-

Court prior to his testimony about the Court's ruling, Trooper Taylor gave his opinion on the cause of the disturbed gravel in response to an open-ended question on direct examination. The Court ruled this was a clear violation of its pretrial ruling and excluded all of Taylor's testimony. Trooper Smith then testified as to the existence of disturbed gravel in conformity with the Court's pretrial ruling.

By this motion, Toyota is first rearguing the same issues ruled upon in the Court's pretrial order regarding Taylor's and Smith's testimonies. Clearly such opinion testimony is not admissible. Secondly, Taylor's open and intentional violation of the Court's ruling limiting his testimony made it necessary to exclude his entire testimony. Toyota was able to solicit the allowed portion of Taylor's testimony regarding the presence of disturbed gravel through Trooper Smith. Such testimony by Taylor was, thus, merely cumulative. There was no error in the Court's rulings on this issue and Toyota has presented no reason to reconsider those rulings.

### B. Exclusion of Expert Testimony of Human Factors Expert Nathan Dorris

Toyota next argues that the exclusion of expert testimony of human factors expert Nathan Dorris was legal error which highly prejudiced it at trial. Toyota designated human factors and warnings expert Nathan Dorris to offer testimony at trial regarding driver inattention (and specifically texting and driving) as well as testimony regarding the warnings provided with the subject vehicle. Prior to trial, the Court excluded Dr. Dorris' opinions regarding driver inattention pursuant to a *Daubert* motion filed by Plaintiffs. At trial, Toyota did not call Dr. Dorris to testify on warnings, but did make a proffer of his report, supporting research, and testimony to preserve all objections to the Court's pretrial ruling.

The argument presented by Toyota on this issue is nothing more than a

rehashing of its arguments in opposition to Plaintiffs' motion to exclude Dr. Dorris'

testimony. The Court held, in its Order excluding Dorris' testimony, that:

> While Dr. Dorris' report is indeed detailed and laced with scientific
> research and conclusions relative to driver inattention, at the end of the
> day, this court concludes that it is too speculative to pass either the
> reliability threshold of Rule 702 or to be helpful to the trier of fact. As
> Graves points out, there is nothing reliable about time extrapolated
> opinions [since W.A.G. sent a text message at 8:14:35 a.m. he must have
> been focused on or interacting with his cell phone 5 or 6 minutes later] and
> supported only by speculative theories that W.A.G was either (1)
> searching for his cell phone, (2) looking at his cell phone or (3) trying to
> verify that his cell phone was still in the same place he left it. An expert's
> opinions are inadmissible when the expert piles speculation upon
> speculation.
>
> Indeed, the entire foundation that driver inattention contributed to
> this accident is built on sand. Dorris relies on the unsubstantiated and
> speculative conclusions of the investigating officers, Taylor and Smith that
> W.A.G. left the roadway prior to the accident, to start the engine of
> inattentiveness down the tracks from the station. "If the foundational data
> underlying opinion testimony are unreliable, an expert will not be permitted
> to base an opinion on that data because any opinion drawn from that data
> is unreliable." *See Guillory v. Domtar Indus.*,95 F.3d 1320, 1331 (5th Cir.
> 1996) (court property excluded expert's opinion because it was based
> upon incorrect, altered facts and speculation designed to bolster the
> defendant's position); *Torch Energy Mktg.*, No. Civ.A. H-01- 3402, 2003
> U.S. Dist. LEXIS 20941, at *31 (S.D. Tex. Mar. 31, 2003); *In re Air Crash
> Disaster*, 795 F.2d 1230, 1235 (5th Cir. 1986).

Toyota was permitted to introduce W.A.G.'s cell phone records and to cross

examine W.A.G and Mary Graves about the records and W.A.G.'s use of his cell phone.

Toyota, through this evidence and other, advanced its theory of driver inattention

repeatedly through the course of the trial. Ultimately, the jury assessed 40%

comparative fault to W.A.G.

Toyota is merely rehashing the arguments originally presented in regard to Dr.

Dorris' testimony. The Court went into great detail and analysis in its decision to

exclude that portion of Dr. Dorris' testimony dealing with driver inattention. Toyota is not

entitled to a "second bite at the apple" by way of this post-trial motion.

### C.  Admission of the 1996 Toyota 4Runner as an Alternative Design

Toyota next argues that the Court erred in allowing Plaintiffs to offer the 1996 Toyota 4Runner as an alternative design with respect to their handling and stability claims.  In a footnote to Toyota's brief, Toyota acknowledges that Plaintiffs were not permitted to identify the alternative design as a 1996 4Runner due to the Court's ruling on Toyota's motion to exclude evidence of subsequent design changes.  Instead, Plaintiffs referred to the design as their "feasible alternative design."  Notwithstanding, Toyota contends that this constituted legal error, as the 1996 Toyota 4Runner is not a substantially similar vehicle but for the change in center of gravity height and track width.

At trial, the Court was presented with substantial testimony and argument regarding its initial decision to exclude any evidence of subsequent design changes to the 1995 Toyota 4Runner.  The Court revisited its pretrial ruling on the issue and ultimately held that the Plaintiffs would be permitted to offer evidence of an alternative feasible design relative to the 1996 Toyota 4Runner without identifying it as such.  This decision was reached after Toyota refused to stipulate that the 1996 4Runner was safer and a feasible alternative design to the 1995 4Runner.  Further, the Court considered the Plaintiffs' expert David Bilek's extensive testimony as to his testing and analysis of the 1996 4Runner as an alternative feasible design before admitting it to the jury.  Additionally, by Mr. Yonekawa's own admission during his deposition, the 1996 4Runner had better rollover resistance than the 1995 model.

The Court finds that the Plaintiffs offered sufficient evidence of an additional alternative design, the 1996 model, while adhering to this Court's instruction not to

identify their feasible alternative design as the 1996 4Runner.  The testimony clearly

revealed this design was available and feasible to Toyota prior to October 1995.

### D.  Admission of Evidence Regarding NHTSA and the New FMVSS 216

Through a motion *in limine* filed prior to trial, Toyota sought the exclusion of

evidence or testimony pertaining to changes in federal safety regulations and ratings

after 1995.  Specifically, Toyota sought to exclude all information regarding changes to

Federal Motor Vehicle Safety Standard (FMVSS) 216 after the subject vehicle was

manufactured in 1995.  The Court excluded such evidence at trial, ruling:

> [T]he question of whether the subject 1995 4Runner was defectively
> designed must therefore be judged against the technological context
> existing at the time of manufacture. The evidence is undisputed that
> Plaintiffs' 4Runner was manufactured in October of 1995 and
> subsequently sold. It met all applicable Federal Motor Vehicle Safety
> Standards. Evidence of what NHTSA may require for future model year
> vehicles has no relevance whatsoever to this 1995 model year vehicle,
> and such evidence shall be excluded for lack of probative value. The court
> shall exclude any testimony regarding the new FMVSS 216. This new
> standard—enacted fourteen years after the subject vehicle was
> manufactured and which does not apply to any vehicles currently on the
> road today—will not assist the jury in determining whether or not the
> subject vehicle was defective when it left the hands of Toyota.

At trial, during the testimony of Toyota's roof design expert, Kenneth Orlowski,

Plaintiffs argued that Toyota had "opened the door" during his direct examination when

he was questioned about CRIS testing he performed on vehicles with production roofs

and reinforced roofs.  The CRIS testing involved the use of a fixture (known as the

CRIS—Controlled Rollover Impact System) on which a vehicle was mounted so it rolls

around the center of gravity at a desired roll rate and horizontal speed until it is dropped.

Hybrid III test dummies were instrumented and seated in the vehicle so that neck

loading could be measured at the point of impact.  Because production vehicles and

vehicles with reinforced roofs were used, the data could be compared in these tests to

determine whether increased roof strength would reduce the severity of head injury in a rollover event. To determine how strong the reinforced roof was, Mr. Orlowski explained they performed a FMVSS 216 test.

Plaintiffs argued that the discussion of the CRIS testing (which post-dated the manufacture of the subject vehicle) and this reference to the FMVSS 216 test performed to compare the strength to weight ratio of the production vs. reinforced roofs "opened the door" to the introduction of evidence regarding the new FMVSS 216 and/or NHTSA's later determination that a higher standard was necessary.

After hearing argument, the Court held that the door had in fact been opened to questioning about the new FMVSS 216 standard and permitted Plaintiffs' counsel to question Mr. Orlowski about FMVSS 216 without specifically mentioning the standard. In subsequent cross examination, Plaintiffs' Counsel did not mentioned the 2009 version of FMVSS 216, which requires a 3 to 1 strength to weight ratio, while the then applicable version required a 1.5 to 1 strength to weight ratio.

On direct examination, Mr. Orlowski testified that a stronger roof would not have changed the results of the CRIS test with reference to neck loading. The question about FMVSS 216 ultimately posed to Mr. Orlowski, of which Toyota complains, was drafted by Plaintiffs' Counsel *in camera* in the presence of the Court and Toyota's counsel and reviewed and approved by all parties. In fact, one of Toyota's Counsel took the question to Mr. Orlowski and returned with Mr. Orlowski's response. The question Plaintiffs' Counsel asked Mr. Orlowski was, "isn't it a fact that NHTSA disagrees with his opinions that a stronger roof is important for protection of the occupant?" Significantly, Toyota did not object to the question when it was asked of Mr. Orlowski in the presence of the jury. Mr Orlowski responded "that is NHTSA's opinion."

A trial is never a black and white exercise in precise detail. Instead, trials are most often gelatinous coagulations of complicated and convoluted facts and issues. Courts and lawyers attempt to mold these elements into coherent patterns to be distilled by willing jurors into a just verdict. No evidentiary ruling by the Court during the course of a trial is ever made in a vacuum. This ruling, as all others, was reached after listening to the evidence, extensive argument of Counsel and the considered judgment of the Court. After considering this ruling in hindsight, the Court finds that it was proper based on the evidence elicited by Toyota on direct examination and nothing Toyota has presented calls it into question, in the mind of the Court.

## MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e)

In the alternative, pursuant to Rule 59(e), Toyota has moved the Court to alter or amend its Judgment (entered on March 2, 2012) to reduce the non-economic damages award from $1 million to $600,000.00.

"A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)(quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)). Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir.2002).

"Rule 59(e) 'serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence and is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been

offered or raised before the entry of judgment." *King v. Freedom Life Ins. Co. of America*, Civil Action No. 2:10–CV–14–KS–MTP, 2011 WL 5835125 at *2 (S.D. Miss. Nov. 21, 2011) (quoting *Knight v. Kellogg Brown & Root Inc.*, 333 F.App'x 1, 8 (5th Cir. 2009); *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)).  "Granting a Rule 59(e) motion is 'an extraordinary remedy,' and it 'should be used sparingly.'"  *Id.* (quoting *In re Pequeno*, 240 F. App'x 634, 636 (5th Cir. 2007).

As this Court observed in its March 2, 2012 Order, the jury was instructed in Instruction C-30, "you will not reduce the amount of the award to Will Graves, if any, by the amount of negligence you attribute to him, if any – the Court will use the percentage of negligence you attribute to him, if any, and make the necessary calculations."  The jury was clearly informed if they found for Will Graves that they were to find the total amount of damages that would compensate him for past, present and future pain, suffering and emotional anguish, including loss of enjoyment of life.  The total amount the jury found for non-economic damages was $2,500,000.  Under Miss. Code Ann. § 11-1-60 (Supp. 2011), the trier of fact "shall not award the plaintiff more than One Million Dollars for noneconomic damages," and under Miss. Code Ann. § 11-7-15 (Supp. 2011), "damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured."


The jury was told that the Court would apply the percentage of contributory negligence to the amount that they found as to all elements of damage (future lost earnings, past medical, future medical, and non-economic damages).  After application, the final jury verdict for Will Graves was 1] future lost earnings $342,000; 2] past

medical expenses $408,707.05; 3] future medical expenses $5,100,000; 4] non-economic damages $1,500,000.00, for a total of $ 7,350,707.05.

The amount of damages awarded for non-economic damages exceeded the cap established by §11-1-60(2)(b), and following the application of the statute, the amount of non-economic damages was reduced to $1 Million. This Court simply took the Jury Instructions and the Jury Verdict and did exactly what the Court told the jury it would do. As the Court held in the final judgment, there is no need to argue which statute should be applied first or to get bogged down in different scenarios, what ifs, or strained interpretations of inapplicable case law. Toyota has failed to meet its burden under Rule 59(e) to secure an alteration or an amendment to the final judgment entered herein.

## CONCLUSION

This was a classic jury case. There was substantial conflict between the parties as to the facts. It was a proper case to submit all the relevant evidence to the jury and let the jury make its determinations of credibility and fact. It is apparent to the court, as evidenced by the special verdict, that certain critical issues of credibility and fact were determined by the jury against Toyota. However, this is the sole province of the jury. In the opinion of the court, there was substantial credible evidence to support the verdict of the jury. The verdict was not the result of bias, prejudice or any other influence outside the evidence and was not contrary to the law as given by the court's instructions. After a careful review of this matter, this court is not left with the firm conviction that the verdict is against the great weight of the evidence. Indeed, the court finds that the verdict is supported by substantial evidence and that the motion should be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the  Motion for Judgment

as a Matter of Law, or, Alternatively, for New Trial, or, Alternatively, to Alter or Amend

the Judgment **[#277]** filed on behalf of the Defendants is denied.

SO ORDERED AND ADJUDGED, this the 4th day of May, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE